*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KENNETH T. RICHEY,

      *Petitioner-Appellant,*

    *v.*

MARGARET BRADSHAW,

      *Respondent-Appellee.*

No. 01-3477

>

On Remand from the
United States Supreme Court.
No. 98-01418—Patricia A. Gaughan, District Judge.

Argued: January 24, 2007

Decided and Filed: August 10, 2007

Before: SILER, DAUGHTREY, and COLE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Kenneth J. Parsigian, GOODWIN PROCTER, Boston, Massachusetts, for Appellant. Michael L. Collyer, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Kenneth J. Parsigian, Paul E. Nemser, GOODWIN PROCTER, Boston, Massachusetts, for Appellant. Michael L. Collyer, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

    COLE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. SILER, J. (p. 19), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

    R. GUY COLE, JR., Circuit Judge. This case is on remand to us from the Supreme Court. On January 25, 2005, we reversed the judgment of the district court denying Kenneth Richey's petition for a writ of habeas corpus, on the grounds that (1) Ohio law did not permit Richey to be convicted of aggravated felony murder on a transferred-intent theory, and (2) the state courts unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in holding that Richey had not been deprived of constitutionally effective representation. *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005). The Supreme Court vacated our judgment, holding that we erred in our interpretation of Ohio law on the transferred-intent issue. Further, the Court held that we had not properly examined whether the arguments and evidence that formed the basis for our ruling on Richey's ineffective-assistance-of-counsel claim were procedurally barred. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

1

Consistent with the Supreme Court's remand instructions, we now revisit Richey's ineffective-assistance claim. For the reasons set forth below, we hold that Richey did not procedurally default this claim, that we properly considered it on the merits, and that the record supports our original conclusion granting Richey habeas relief because his trial attorney did not function as counsel guaranteed by the Sixth and Fourteenth Amendments.

## I. FACTS

The details of this case were extensively set forth in our prior opinion, *Richey*, 395 F.3d at 664-71, familiarity with which is presumed. Here, we provide only a summary of the most important facts.

### A. The Trial

In 1986, when he was twenty-one, Kenneth Richey was convicted and sentenced to death by an Ohio state court for aggravated felony murder in connection with the death of two-year-old Cynthia Collins.

The State argued at trial that in the early morning hours of Monday, June 30, 1986, Richey intentionally set fire to the apartment of Hope Collins, Cynthia's mother, due to a jealous rage directed at Candy Barchet, Richey's ex-lover. Barchet occupied the apartment immediately beneath Collins's and that night she was with another man, Mike Nichols, with whom she had just begun a relationship. The State conceded at trial that it had no evidence suggesting that Richey intended to kill two-year-old Cynthia. The State argued instead that by lighting fire to Collins's apartment, Richey intended to kill Barchet and Nichols in Barchet's apartment below.

The evidence presented at trial established that on the evening of Sunday, June 29, Richey and other residents of the New Farm Village apartments in Columbus Grove, Ohio, including Collins, Barchet, and Nichols, partied together. Several witnesses testified that Richey was very intoxicated and smoked marijuana that night.

Barchet testified that she had ended her relationship with Richey on the Wednesday or Thursday prior to the fire. At some point during the evening of June 29, however, a discussion took place between Barchet, Nichols, and Richey, in which Barchet made it clear that while she and Richey could remain friends, she wanted to pursue a romantic relationship with Nichols. Witness Bob Dannenberger testified that Richey seemed upset by Barchet's preference for Nichols, "as if his heart was broken." (Joint Appendix ("JA") 5080.) Peggy Villearreal (a.k.a. Peggy Price), an apartment resident and friend of Richey's, also thought he seemed upset by Barchet's rejection of him, but when she asked him about it, Richey told her that he was not going to let it bother him.

At about 1:00 in the morning, Barchet and Nichols left the party, which by this point had migrated to Villearreal's apartment. Richey continued hanging out at Villearreal's, and while talking with Dannenberger, Villearreal, and another resident, he said that Building A of the three-building apartment complex would "burn" that night. Richey further said that he would use the skills he learned while serving in the U.S. Marines to torch the place. It does not appear that anyone took Richey's comments seriously at the time. Dannenberger testified that he thought Richey had just made the kind of remark that people sometimes make while intoxicated.

At about 3:00 or 3:15 in the morning, Denny Smith, one of Collins's friends, stopped by. Collins testified at trial that Richey agreed to babysit Cynthia in exchange for being able to sleep on her couch, while she went out with Smith. A resident who was awakened by Smith's pick-up truck testified that after Collins drove off with Smith, she saw Richey stumble into some bushes and pass out. A few minutes later, Richey revived and began walking toward Collins's apartment, but the resident did not see whether he actually ended up there.

The fire started in Collins's apartment around 4:15 a.m. No one saw Richey set the fire or flee the burning apartment. However, numerous witnesses testified that they saw Richey standing on the landing to Collins's apartment screaming that there was a baby inside. Richey attempted to enter the apartment, apparently in an effort to rescue Cynthia, but was forced back by the smoke and flames. One firefighter agreed that Richey's actions were indicative of someone completely disregarding his own safety. Ultimately, firefighters had to restrain Richey because he was so distraught.

Once the fire had been brought under control, Barchet was allowed back into her apartment to retrieve clothing and diapers for her son. Richey apparently followed her and told her that if he could not have her, nobody would, and that he would take care of her after Nichols left.

The State argued at trial that Richey set the fire by using accelerants. Specifically, the State maintained that Richey stole gasoline and paint thinner from a greenhouse located across the street, poured these in Collins's living room and patio, and then ignited them. To substantiate its theory, the State put on two expert witnesses from the state fire marshal's office and the state arson lab. Robert Cryer, an investigator with the fire marshal's office, testified that the speed and intensity of the fire, as well as the burn patterns, established that the fire was caused by the use of accelerants. Cryer testified, "This fire occurred by an accelerant being poured on the living room carpeting and out through and down onto the patio decking . . . . [I]t is very definite that an accelerant was poured on the decking of the patio. It was very definite that an accelerant was poured in the living room on the carpeting." (JA 5695.) In addition, Bob Gelfius, a forensic chemist with the state arson lab, testified that he used a method called gas chromatography to identify the presence of accelerants in the remains of Collins's living-room carpet and on samples of wood from her patio. Gelfius testified that he found paint thinner and gasoline on the carpet and paint thinner on the wood samples.

Richey's trial counsel, William Kluge, retained Gregory DuBois to investigate the cause of the fire and test the conclusions of the State's experts. DuBois did not have any special expertise in arson investigations and little arson-related training. Indeed, his arson training consisted of only two two-day seminars put on by the state arson lab, whose conclusions in Richey's case he had been hired to review. Kluge contacted DuBois in early September 1986, but did not authorize DuBois to start his investigation until approximately mid-November 1986. The work DuBois performed was limited to meeting with Bob Gelfius, the State's expert, for the purpose of having Gelfius review the forensic evidence and explain his conclusions. DuBois then informed Kluge that he agreed with the State's conclusion that the fire was caused by arson. Kluge did not question DuBois about the nature of his investigation or ask him to explain why he concurred with the State. DuBois explained that Kluge "was surprisingly nonargumentative with me or didn't challenge me on what I thought or why I thought what I did or anything. I was surprised at how unbiased he was about that, and I still am today." (JA 6361.)

Prior to knowing what DuBois's testimony would entail, Kluge disclosed him as a trial witness. When the State figured out that Kluge was not going to call DuBois, Richey's only scientific expert, the State subpoenaed DuBois, who then conceded on the stand that he agreed with the State's analysis of the evidence, and agreed that the fire was caused by arson. Kluge did not object to DuBois's testimony and did not cross-examine him. Further, Kluge did not introduce any competing scientific evidence to rebut the State's findings. Kluge largely limited his cross-examination of the State's experts to the issues of whether any accelerants had been found on Richey's clothing and boots (they had not) and to the chain of custody of Collins's living-room carpet, which had been discarded at the county dump, prior to being tested for the presence of accelerants. Thus, Richey's sole forensic expert testified against him at trial, and the State's assertions that the fire was caused by arson went entirely unchallenged.

**B.     State and Federal Post-Conviction Proceedings**

Richey challenged his conviction and sentence on direct appeal but both the state intermediate appellate court and the Ohio Supreme Court affirmed. *State v. Richey*, 595 N.E.2d 915 (1992). Richey then filed a post-conviction petition in the state court. There, he adduced new forensic evidence that cast doubt on the State's arson conclusions. In particular, Richey retained fire experts Richard Custer and Andrew Armstrong who opined that the State used flawed scientific methods not accepted in the fire-investigation community to determine that arson caused the fire and that the samples of carpeting and wood from Collins's apartment did not contain evidence of accelerants. In particular, Custer testified that the State's experts "ignored facts that make it just, if not more, likely that the June 30, 1986 fire was caused by the careless discard of smoking materials than that the fire was caused by arson." (JA 246.)

Despite Richey's new evidence, the state post-conviction court denied his request for an evidentiary hearing and dismissed his petition. The intermediate appellate court affirmed and the Ohio Supreme Court declined to review the case. *State v. Richey*, No. 12-97-7, 1997 Ohio App. LEXIS 5284 (Ohio Ct. App. Nov. 18, 1997); *State v. Richey*, 690 N.E.2d 1287 (1998).

Richey then filed a petition for habeas corpus relief in the district court. The district court found that Richey's new experts "certainly undermine the state's arson evidence," but the court nevertheless denied his petition in full. *Richey v. Mitchell*, No. 1:98-CV-1418, slip op. at 76 (N.D. Ohio Apr. 3, 2001) ("Dist. Ct. Op.").

We reversed the judgment of the district court, holding that (1) Ohio law did not allow the doctrine of transferred intent to satisfy the *mens rea* element of the crime of aggravated felony murder; and (2) Richey was deprived of the effective assistance of counsel as a result of his counsel's mishandling of the scientific evidence.

On November 28, 2005, the Supreme Court vacated our judgment and remanded for further proceedings. *Bradshaw v. Richey*, 546 U.S. 74 (2005). The Supreme Court held that we erred in determining that Ohio law precluded Richey from being convicted of aggravated felony murder on a transferred-intent theory. In addition, the Court vacated our ruling on Richey's ineffective-assistance claim and remanded for further consideration of that claim.

On remand, we considered further briefing from the parties and held oral argument. For the reasons set forth below, we again hold that Richey is entitled to a writ of habeas corpus because his counsel failed to function as the counsel guaranteed by the Sixth and Fourteenth Amendments.

## II. DISCUSSION

**A.     Instructions on Remand**

As described above, the Supreme Court has remanded the case for us to further consider Richey's ineffective-assistance-of-counsel claim. The Court focused on three procedural questions affecting our disposition of that claim, including (1) our reliance on evidence not presented to the state courts, (2) our lack of deference to a state-court factual finding, and (3) Richey's procedural default of certain arguments. The Court's remand language reads as follows:

> As petitioner [the State] contends, the Sixth Circuit erred in its adjudication of this claim by relying on evidence that was not properly presented to the state habeas courts without first determining (1) whether respondent was at fault for failing to develop the factual bases for his claims in state court, *see Williams v. Taylor*, 529 U.S. 420, 430-32, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000), or (2) whether respondent satisfied the criteria established by 28 U.S.C. § 2254(e)(2). *See Holland*

*v. Jackson*, 542 U.S. 649, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). Similarly, the Sixth Circuit erred by disregarding the state habeas courts' conclusion that the forensic expert whom respondent's trial counsel hired was a "properly qualified expert," App. to Pet. for Cert. 347a, without analyzing whether the state court's factual finding had been rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Compare App. to Pet. for Cert., 347a, with 395 F.3d, at 683. In addition, as petitioner contends, the Sixth Circuit erred in relying on certain grounds that were apparent from the trial record but not raised on direct appeal—namely that trial counsel (1) inadequately cross-examined experts called by the State, (2) erred by prematurely placing the forensic expert counsel had hired on the witness list, and (3) failed to present competing scientific evidence against the State's forensic experts—without first determining whether respondent's procedural default of these subclaims could be excused by a showing of cause and prejudice or by the need to avoid a miscarriage of justice. See App. to Pet. for Cert. 340a-341a, 351a-354a (state courts' holding that these subclaims should have been raised on direct appeal); *id.*, at 109a-110a (District Court's holding that this default was not excusable under *Coleman v. Thompson*, 501 U.S. 722, 749-750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Respondent, however, contends that the State failed to preserve its objection to the Sixth Circuit's reliance on evidence not presented in state court by failing to raise this argument properly before the Sixth Circuit. *See* Brief in Opposition 24-26. Because the relevant errors had not yet occurred, the Sixth Circuit has had no opportunity to address the argument that the State failed to preserve its *Holland* argument. It is better situated to address this argument in the first instance.

*Bradshaw*, 546 U.S. at 80.[1]

We agree with the parties that the Supreme Court's remand instructions are not entirely clear. To begin, there is an ambiguity regarding whether the Court has conclusively determined that we erred with respect to the three procedural issues it delineates, or whether it has simply recited the State's assertions as to how we erred and instructed us to undertake further analysis in light of the State's claims of error. Unsurprisingly, the State argues that the Court has held that we did in fact err, while Richey argues that the Court has merely reiterated the State's claims of error without resolving them against him.

The second, and more problematic, ambiguity involves the last three sentences of the Court's remand instructions (beginning with "Respondent, however, contends"), referring to whether the State preserved its *Holland* argument. Once again, there are two possible interpretations of this language. One interpretation, and that advanced by Richey, is that the Supreme Court is saying that if we determine that the State failed to object to our consideration of the evidence developed for the first time in the district court, then the State is precluded from arguing that we are limited by state-court factual findings, or that any aspect of Richey's claim is procedurally defaulted (issues two and three, respectively, enumerated by the Court). On the other hand, a second interpretation, the one urged by the State, is that the Supreme Court's statements about whether the State preserved its *Holland* objection are applicable only to the first issue identified by the Court, namely, whether we improperly relied on evidence that was not presented to the state courts.

---

[1]As to the procedural-default issue, the Supreme Court seems to say that the district court held that the first and third questions, namely, whether trial counsel "(1) inadequately cross-examined experts called by the State," and "(3) failed to present competing scientific evidence against the State's forensic experts," were procedurally defaulted. However, the district court expressly found that these arguments were not procedurally defaulted. (Dist. Ct. Op. 109-12) (holding that the following arguments were not defaulted: "Defense counsel failed to conduct an adequate background search for a competent expert, permitting false scientific testimony to go unchallenged during trial," and "[d]efense counsel failed to call an expert witness to rebut the testimony of [the State's experts].").

We agree with Richey's construction of the Supreme Court's remand language, and conclude that it is more faithful to the structure of that language and to applicable case law. Where the Court's comments regarding the State's preservation of its *Holland* objection appear only *after* the Court's enumeration of the three procedural issues, and where the use of the word "however" ("Respondent, however, contends") appears intended to signal a break from everything that came before it, we think that the *Holland* question is the overarching question on remand, the resolution of which necessarily resolves the other procedural issues. If the Supreme Court meant for its *Holland* comments to apply only to the first issue—whether we improperly relied on evidence that was not presented to the state courts—then it presumably would have inserted those comments immediately after its discussion of the first procedural issue, rather than after discussing all three issues. Moreover, the Court's plural use of the term "errors" in its statement that "[b]ecause the relevant errors had not yet occurred, the Sixth Circuit has had no opportunity to address the argument that the State failed to preserve its *Holland* argument," supports our conclusion that the *Holland* question is dispositive on remand, such that the State's failure to object to our consideration of the newly developed evidence functions as a blanket waiver of its right to argue that we are confined by state-court factual findings or that Richey has procedurally defaulted his ineffective-assistance claim.

Because we interpret the Supreme Court's remand language as Richey does, we will begin by undertaking the analysis called for by this interpretation. This analysis will turn on whether the State waived its objection to our reliance on the evidence Richey developed in the district court, and whether Richey has asserted the same ineffective-assistance claim throughout his state and federal proceedings. Second, out of an abundance of caution, we will conduct a second analysis according to the State's preferred reading of the remand language. Here, we will assume that the Supreme Court held that we did in fact err as to the three identified procedural hurdles and that the Court's *Holland* comments apply only to the first procedural issue. Under either interpretation—Richey's or the State's—we conclude once again that the state courts unreasonably applied *Strickland* in determining that Richey was not deprived of his constitutional right to the effective assistance of counsel.

**B.      Analysis According to Richey's Interpretation of the Supreme Court's Remand Language**

Here we consider whether the State waived its objection to our reliance on Richey's new evidence and whether Richey's ineffective-assistance claim has shifted over time such that the state courts have not had a fair opportunity to rule on it.

1.      *Our Reliance on Evidence not Presented to the State Courts*

As the Supreme Court noted, in our prior opinion we drew on facts that Richey developed for the first time in the district court and that, therefore, were not presented to the state courts.

Under 28 U.S.C. § 2254(e)(2), a federal court reviewing a habeas petition may not rely on evidence that was not presented to the state courts unless the petitioner can show that (1) he was diligent in seeking to develop his claims in the state courts, or (2) he satisfies the conditions set forth in § 2254(e)(2). *Holland v. Jackson*, 542 U.S. 649 (2004); *Williams v. Taylor*, 529 U.S. 420 (2000). "Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. A petitioner whose efforts to develop his claims were rebuffed by the state court may still be deemed "diligent." *Id.*

In the state post-conviction court, Richey sought an evidentiary hearing. The state court denied this request and dismissed his petition. After Richey filed his habeas petition in the federal

district court, that court granted both parties leave to take discovery. Richey then moved for an evidentiary hearing. He argued that § 2254(e)(2) did not preclude him from receiving a hearing because he had been diligent in seeking to develop the factual predicate for his claim in state court. (Richey's Supp. Br. (filed Mar. 1, 2006), Ex. B at 37-40.) The State opposed Richey's motion but conceded that § 2254(e)(2) "does not bar an evidentiary hearing in this case." (*Id.*, Ex. A at 30.) Moreover, the State urged the district court simply to expand the record in the case, rather than take the extra step of holding an evidentiary hearing. The State represented to the district court that "[t]he record . . ., as supplemented by the depositions and documents created through discovery, is sufficient for this [c]ourt to make its determination." (*Id.*) The district court denied Richey's motion but adopted the State's proposed solution and exercised its authority under Habeas Rule 7 to expand the record to include all the discovery taken. Although it denied his motion, the district court expressly found that "Richey did attempt to develop the factual basis for his claims in state court. Thus, according to prevailing law, Richey is not barred from obtaining an evidentiary hearing." (JA 93.)

On appeal, the State did not challenge the district court's ruling that Richey had been diligent in attempting to develop his claim in the state court. Accordingly, we have no trouble concluding that we properly relied on the evidence newly developed in the district court.

2.      *The Uniformity of Richey's Claim*

Our conclusion that we acted within the bounds of our authority in considering Richey's new evidence does not put an end to matters. If, as we conclude here, § 2254(e)(2) is no bar, we may consider evidence not presented to state courts so long as "the supplemental evidence presented by [the petitioner] d[oes] not fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 257-58 (1986) ("We have never held that presentation of additional facts to the district court, pursuant to that court's directions, evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts.") Here, the State argues that the nature of Richey's ineffective-assistance-of-counsel claim changed between its presentation in the state courts and the district court and its subsequent presentation in this Court, such that we may not consider it.

We disagree with the State. A review of the record shows that at all relevant times, Richey's ineffective-assistance claim has been predicated on the single theory that his counsel was ineffective in handling the scientific evidence. In his state post-conviction petition, Richey pleaded the following:

> Richey's trial counsel relied exclusively on DuBois, who was incompetent as an expert. This misplaced reliance materially prejudiced Richey's defense in two separate ways. First, Richey's trial counsel failed to conduct a competent cross-examination of the prosecution's "expert" witnesses. Second, Richey's trial counsel failed to present any of the compelling scientific evidence Richey presents here, which establishes to a reasonable degree of scientific probability that the fire was *not* arson-related. In fact, Richey's trial counsel offered no expert scientific testimony at all to rebut the false scientific testimony of Cryer, Gelfius, and DuBois. (JA 1073 (¶ 68).)

> Richey's defense counsel did not conduct an adequate investigation to locate a competent expert who would have rebutted the false scientific testimony of Cryer and Gelfius. (*Id.* 1075 (¶ 77).)

Under the facts of this case, the failure of Richey's defense counsel to call an expert witness to rebut the false scientific testimony of Cryer, Gelfius, and DuBois deprived Richey of the effective assistance of counsel . . . . (*Id.* 1077 (¶ 84).)

Because he had consulted no competent experts, Richey's trial counsel could not even effectively cross-examine the State's expert witnesses about the cause of the fire. (*Id.* 1078 (¶ 86).)

In his federal habeas petition, Richey pleaded the same theory of ineffective assistance of counsel as he had in his state post-conviction petition, often using the identical language:

Richey's defense counsel did not conduct an adequate investigation to locate a competent expert who would have rebutted the false scientific testimony of Cryer and Gelfius. (*Id.* 62 (¶ 113).)

[T]he failure of Richey's defense counsel to call an expert witness to rebut the false scientific testimony of Cryer, Gelfius, and DuBois deprived Richey of the effective assistance of counsel. Defense counsel's failure to present *any* expert testimony to rebut the false scientific testimony of Cryer, Gelfius, and DuBois was particularly prejudicial here because (1) that false scientific testimony formed the core of the State's case—the sole record evidence of arson—and (2) competent expert testimony from persons like Armstrong and Custer was readily available and would have conclusively established that the testimony offered by Cryer, Gelfius, and DuBois was false and scientifically unsound. (*Id.* 64 (¶ 115).)

To be sure, Richey marshaled new facts to support his claim when he was granted the right to take discovery in the district court. He presumably would have adduced the same facts in the state court, had that court not denied his request for an evidentiary hearing. In any event, armed with the discovery that the district court authorized and incorporated in the record, Richey put his new facts before this Court on appeal. The crux of his claim did not change, however. He continued to argue that his counsel was ineffective in handling the scientific evidence. In his opening merits brief to this Court, Richey described his ineffective-assistance claim as follows:

Richey's trial counsel failed to take the requisite reasonable steps to present favorable expert testimony and to prevent adverse expert testimony from reaching the fact finder, and as a result, the three-judge panel was presented uncontradicted *but false* prosecution evidence that arson caused the fire at the Collins's apartment. [¶] In dealing with the expert DuBois, Richey's trial counsel failed in his obligations at nearly every stage of the process. He selected an ill-qualified expert. He failed to work with that expert to any meaningful degree and had no idea what investigation the expert made or how the expert reached his conclusions. He failed to inform the expert of facts important for the defense. And when DuBois developed opinions favorable to the prosecution—opinions that were a foregone conclusion because DuBois relied on and deferred to the prosecution's experts—Richey's counsel offered DuBois up *as a witness for the prosecution*.

(Richey's App. Br. 86-87.)

Where the legal basis for Richey's claim has remained constant, and where the facts developed in the district court merely substantiate it, we cannot say that the claim has been so "fundamentally alter[ed]" from that presented to the state court as to preclude our review.

Circuit precedent confirms our conclusion. In *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365-66 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1832 (2007), the petitioner asserted an ineffective-

assistance claim on the grounds that his counsel failed to inform him about a favorable plea offer. The State argued that the claim had not been fairly presented to the state courts because the petitioner relied on a different factual predicate in the state court compared to the federal court. According to the State, the petitioner relied on one plea offer in support of his ineffective-assistance claim in the state court, and a separate plea offer in his federal habeas proceedings. *Id.* We rejected the State's argument as factually inaccurate, finding that the petitioner had put the state court on notice as to both plea offers. However, we went on to say that even if the State's argument were factually correct, the new facts relied upon by the petitioner in federal court did not "fundamentally alter" his claim:

> The purportedly new evidence of the morning [plea] offer does not fundamentally alter the claim that [petitioner's attorney] failed to relay a favorable plea offer that [petitioner] would have accepted, as it would fit comfortably within the rule that "under *Vasquez* and allied decisions, the petitioner may supplement and clarify the record, *inter alia*, through introduction of new factual materials supportive of those already in the record or presentation of additional instances of the same alleged violation."

*Id.* at 366 n.2 (quoting 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 23.3c, at 1088-89 (5th ed. 2005)) (internal brackets and ellipses omitted). *Compare Morris v. Dretke*, 413 F.3d 484, 495 (5th Cir. 2005) (holding that the petitioner's presentation of IQ evidence for the first time in federal court did not render his *Atkins* claim fundamentally altered and therefore unexhausted because the petitioner presented the same legal claim to the state courts and supported it there "with pertinent, if not conclusive, evidence of low intellectual functioning and adaptive deficits") *with Hawkins v. Mullin*, 291 F.3d 658, 670 (10th Cir. 2002) (holding that the petitioner's ineffective-assistance claim was not exhausted where he argued in state court that his counsel was deficient for failing to challenge the trial court's jurisdiction but he argued in federal court that his counsel was deficient for failing to investigate mitigating evidence).

Further, because Richey's ineffective-assistance claim is not "based upon a different allegedly ineffective action than the claim presented to the state courts," *Caver v. Straub*, 349 F.3d 340, 346-47 (6th Cir. 2003), we reject the State's attempts to manufacture new ineffective-assistance claims based on the new facts developed in the district court. For instance, the State treats Richey's factual assertions regarding how his trial counsel delayed and limited DuBois's investigation, failed to question DuBois's investigation, and failed to tell DuBois about possible evidence spoliation, as new theories of ineffective assistance that were not properly raised before the state courts. We are unpersuaded by this argument. As the record shows, Richey has uniformly asserted a single ineffective-assistance theory in connection with his counsel's mishandling of the scientific evidence. Just because Richey has presented new information, including the new facts regarding DuBois's qualifications and his trial counsel's oversight and interaction with DuBois, does not mean that Richey has asserted new claims not presented to the state courts; it simply means that Richey has supplemented and clarified his claim.

Here, the State cannot and does not argue that Richey never presented to the state court an ineffective-assistance claim premised on the theory that his counsel rendered deficient representation by mishandling the scientific evidence. Moreover, the State cannot and does not argue that it objected to the district court's expansion of the record to include all the discovery taken in the district court. Finally, the State conceded at oral argument in this Court that "as to the claims [Richey] actually raised in the state court," we are not barred from considering new evidence substantiating those claims. As a result, we conclude that the State is foreclosed, first, from arguing that our analysis must be limited to the facts as found by the state courts and, second, from arguing that Richey's ineffective-assistance claim is in any way procedurally defaulted.

Accordingly, we were not precluded from considering Richey's ineffective-assistance claim in our prior opinion. We therefore once again hold, for the reasons set forth in that opinion, *Richey*, 395 F.3d at 682-88, as well as those described in part C.4 below, that the state courts unreasonably applied *Strickland* in determining that Richey had not been denied his constitutional right to effective representation.

**C.      Analysis According to the State's Interpretation of the Supreme Court's Remand Language**

The State has a different take on the meaning of the Supreme Court's remand language. The State contends that the Supreme Court held that we erred in resolving each of the three procedural issues identified by the Court and that we must therefore re-examine each one and determine whether our original ruling granting Richey's habeas petition can stand. Further, the State disagrees that its failure to object to our consideration of the newly developed evidence bars it from arguing that Richey has procedurally defaulted aspects of his claim.

As described above, we believe that Richey's interpretation is the more persuasive. In the alternative, however, we will re-examine Richey's ineffective-assistance claim as the State would have us do. This exercise serves the interest of clarity and will demonstrate that, at the end of the day, whether our analysis tracks that advocated by Richey or that proposed by the State, the record supports our original conclusion that the state courts unreasonably applied *Strickland* in holding that Richey was not deprived of the effective assistance of counsel.

Each of the three procedural issues enumerated by the Supreme Court are discussed below.

1.      *Our Reliance on Evidence not Presented to the State Courts*

We have already concluded, as described in part B.1 above, that the State waived its objection to our reliance on the evidence developed for the first time in the district court. No more needs to be said about that here. We move on to consider the second and third issues identified by the Supreme Court—DuBois's qualifications and procedural default—because, unlike the preceding analysis, here we do not assume that the State's waiver of its *Holland* objection pretermits our consideration of state-court factual findings and the State's procedural-default arguments.

2.      *DuBois's Qualifications*

In our prior opinion, we held that one of the ways in which Richey's trial counsel mishandled the scientific evidence was in retaining an expert, Gregory DuBois, who was not qualified to render an opinion on the cause of the fire. The Supreme Court noted that the state post-conviction court had found that DuBois was a "properly qualified expert." *Bradshaw*, 546 U.S. at 80; JA at 1095. Accordingly, the Court held that we were obligated to consider whether, consistent with AEDPA deference to state court factual findings, Richey had rebutted by clear and convincing evidence the post-conviction court's factual determination that DuBois was a qualified expert witness. *Bradshaw*, 546 U.S. at 80; *see also Spisak v. Mitchell*, 465 F.3d 684, 691 (6th Cir. 2006) ("A determination of a factual issue made by a state court is presumed to be correct, and the Defendant has the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The state post-conviction court predicated its conclusion that DuBois was a qualified expert primarily on its view that Richey failed to attack DuBois's qualifications in his petition for relief. (JA at 1095 ("Richey fails to attack Mr. DuBois' qualifications."); *accord id.* at 1097 ("Richey does not allege that Mr. DuBois was not qualified to render an expert opinion.").) The state court arguably misconstrued Richey's allegations because, although Richey did not specifically use the word "qualifications" in his references to DuBois, he repeatedly alleged that his counsel performed defectively by retaining an "incompetent" expert witness. (*See, e.g., id.* at 1073 ("Richey's trial

counsel relied exclusively on DuBois, who was incompetent as an expert.").)  State court factual findings premised on a plain misreading of the record are not entitled to deference by a federal habeas court. *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) (commenting that "where the state courts plainly misapprehend or misstate the record in making their findings, . . . that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable").

Here, however, we cannot say that the state court's factual finding is undeserving of deference.  The state court did not act unreasonably in determining that Richey failed to allege that DuBois was unqualified where Richey's challenge to DuBois's competence could be rationally interpreted as an attack upon DuBois's inadequate performance in reviewing the scientific evidence, rather than an attack upon DuBois's ability, based on his training, experience, and knowledge (i.e., his "qualifications") to do the job.  Thus, because there is a distinction between allegations regarding "competence" and allegations regarding "qualifications," it was not unreasonable for the state court to find that DuBois was "a properly qualified expert," based on Richey's failure to specifically challenge DuBois's qualifications in his post-conviction petition.

It still remains to be determined whether Richey has rebutted the state court's factual finding by clear and convincing evidence.  Through discovery taken in the district court, Richey developed facts showing that Dubois was an engineer who had no accreditations in arson or fire investigations and worked primarily in vehicle accident reconstructions; he was a member of both the American Society for Testing Materials and the International Association of Arson Investigators but had not attended any seminars or trainings by either organization; his arson training consisted of only two two-day non-participatory seminars put on by the Ohio Arson Lab, whose conclusions in Richey's case he was hired to review; and he admired the Chief of the State Arson Lab and believed that the State's experts were more competent and experienced than he and his firm.  As we did in our prior opinion, we continue to find these facts disturbing.  In a case in which the State relied heavily on complex scientific evidence of arson, and particularly in a case in which Richey was on trial for his life, DuBois's lack of formal arson training and his belief that the State's ability to ascertain the cause of the fire was superior to his own significantly undermines the state court's conclusion that DuBois was a qualified forensic expert.

Nonetheless, despite our discomfort, we cannot say that Richey's evidence satisfies the demanding standard of clear and convincing evidence. In addition to the facts described above, the record also shows that prior to 1987, DuBois's firm was involved in 400 to 500 fire investigations and DuBois played some role in almost all of them.  Further, in 1986, DuBois participated in ten to thirty arson investigations.

We thus conclude that Richey has not met the high burden of rebutting the state court's finding that DuBois was qualified.  This conclusion, however, does not adversely affect our determination that Richey is entitled to habeas relief because, as we explained in our prior opinion, "even if counsel's initial decision in hiring DuBois was proper, counsel's ineffective handling of DuBois resulted in prejudice to Richey."  *Richey*, 395 F.3d at 686.  In other words, the question of DuBois's qualifications is not dispositive of our review of Richey's ineffective-assistance-of-counsel claim.

### 3.    *Procedural Default*

The third question before us is whether certain grounds that we relied upon in granting Richey habeas relief on the basis of his ineffective-assistance-of-counsel claim are procedurally defaulted because Richey failed to assert them on direct appeal in the state courts.  If they are procedurally defaulted, we must take the further step of determining whether Richey has established "cause and prejudice" to excuse the default.  The grounds at issue include whether Richey's trial

counsel "(1) inadequately cross-examined experts called by the State, (2) erred by prematurely placing the forensic expert counsel had hired on the witness list, and (3) failed to present competing scientific evidence against the State's forensic experts."[2] *Bradshaw*, 546 U.S. at 80.

### (a)        Richey's Ineffective-Assistance-of-Counsel Claim in the State Courts

Richey raised an ineffective-assistance-of-counsel claim on direct appeal in the state courts, but insofar as that claim was tied to his attorney's handling of the scientific evidence, Richey argued only that his trial counsel was deficient for failing to object to the State's use of DuBois. The Ohio Supreme Court rejected Richey's argument. *State v. Richey*, 595 N.E.2d 915, 927-28 (1992).

In his state post-conviction petition, Richey argued for the first time that he was denied the effective assistance of counsel because his attorney failed to present available scientific evidence tending to show that the fire was not caused by arson. Richey alleged that "[b]ecause DuBois' actions fell far below a minimal standard of professional competency, Richey's defense counsel was rendered incompetent to provide meaningful assistance to Richey on the issue of whether the June 30, 1986 fire was arson-related—the most critical element of Richey's defense." (JA 1072.) Richey asserted that his counsel had not conducted an adequate search for a competent expert and, therefore, that his counsel was unable to effectively cross-examine the State's experts, and unable to call an expert witness to rebut the false scientific testimony of the State's experts. Richey also argued that his trial counsel was deficient for disclosing DuBois as a defense expert even after learning that DuBois agreed with the State's arson analysis.

The state court dismissed Richey's post-conviction petition without an evidentiary hearing. It held that Richey's ineffective-assistance-of-counsel claim was barred by Ohio's res judicata rule because the facts giving rise to the claim were apparent from the trial record and, therefore, that Richey should have asserted the claim on direct appeal. (JA 1098-99.) The state court of appeals affirmed the trial court's dismissal, stating that Richey's ineffective-assistance-of-counsel claim "could have been raised upon direct appeal from the conviction in this case because the fact that defense counsel failed to call an expert to dispute the state's experts is demonstrated on the trial record. Therefore, we find that this claim is res judicata." (JA 1113.) The state appellate court also denied the claim on the merits, summarily concluding that whether the outcome of Richey's trial would have been different had another expert testified was "pure speculation" and that Richey's trial counsel rendered constitutionally adequate representation by offering "mitigating and exculpatory evidence." (JA 1114.)  The Ohio Supreme Court dismissed Richey's appeal as not involving any substantial constitutional question.

### (b)        Richey's Ineffective-Assistance-of-Counsel Claim in the Federal Courts

The district court did not address the state courts' conclusion that Richey had procedurally defaulted his claim that his counsel performed defectively by inadequately cross-examining the State's experts and failing to present competing scientific testimony. Instead, deviating from the holdings of the state courts, the district court found that Richey's claim was not procedurally defaulted insofar as he alleged that "[t]he actions of an incompetent defense expert prevented counsel from rendering meaningful assistance"; "[d]efense counsel failed to conduct an adequate

---

[2]In our discussion in part B.2 above, we rejected the proposition that Richey's ineffective-assistance-of-counsel claim is susceptible to splintering into different claims that must each be separately scrutinized for possible procedural default. We do not take lightly the fact that that is apparently what the Supreme Court has done here, but we also cannot ignore that the Supreme Court decided this matter on a petition for certiorari, and therefore without the full record before it, which would have disclosed the unitary, uniform nature of Richey's ineffective-assistance claim throughout his state and federal post-conviction proceedings. Nonetheless, following through with our analysis according to the State's reading of the Supreme Court's remand language, we individually consider the procedural propriety of each of the aforementioned grounds.

background search for a competent expert, permitting false scientific testimony to go unchallenged during trial"; and "[d]efense counsel failed to call an expert witness to rebut the testimony of [the State's expert witnesses] and DuBois." (Dist. Ct. Op. 109.) The district court rejected the State's argument that these "sub-claims" should have been raised on direct appeal; instead, the court held that they are preserved for federal review because they depend on evidence outside the trial record, and therefore, under Ohio law, they could not have been raised on direct appeal. (*Id.* 112.) As to Richey's contention that his counsel was defective in identifying DuBois as a trial expert, the district court agreed with the State that this claim should have been raised on direct appeal, and therefore is procedurally defaulted.

On appeal, we held, as the district court did, that Richey's claim is not procedurally defaulted because it depends on evidence outside the record. This evidence includes

> (1) the testimony of DuBois, who explained trial counsel's limited oversight, supervision, and engagement; (2) the testimony of trial counsel, which illustrated the process (or lack thereof) by which he decided to hire DuBois, as well as his oversight (or lack thereof) over the course of DuBois's scientific investigation; and (3) the testimony of Custer and Armstrong, who explained the type and quality of scientific analysis that a reasonably competent expert would have performed at the time of Richey's trial.

*Richey*, 395 F.3d at 682. In raising the claim in his state post-conviction petition, his first opportunity to do so, we held that Richey sufficiently preserved it for federal habeas review. *Id.*

### *(c)    Ohio's Res Judicata Rule*

The Ohio procedural rule that the state post-conviction court relied upon in dismissing Richey's ineffective-assistance claim provides that the claim must be raised on direct appeal where it does not depend on evidence outside the record and where the defendant is represented by new counsel. *State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982). If the requirements of this res judicata rule are met, an ineffective-assistance claim asserted in a post-conviction petition must be dismissed. On the other hand, "allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of [O.]R.C. 2953.21." *State v. Coleman*, 707 N.E.2d 476, 483 (1999); *accord Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000) (stating that Ohio's res judicata rule "has been consistently interpreted to stand for the proposition that a claim of ineffective assistance of trial counsel, which is dependent upon evidence outside the record, is to be raised in a post-conviction proceeding rather than on direct appeal").

### *(d)    Richey's Claim is not Procedurally Defaulted*

Federal courts are prohibited from "review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In *Byrd*, we analyzed Ohio's res judicata rule and its application by Ohio courts and held that it is an adequate and independent state procedural rule. 209 F.3d at 521.

Our inquiry does not end here, however. We have declined to observe Ohio's procedural bar and instead have proceeded to the merits of an ineffective-assistance claim when we have concluded that Ohio improperly invoked its res judicata rule. In *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005), the habeas petitioner argued that his trial counsel was ineffective for failing to hire a psychologist to testify at his mitigation hearing until a day before the hearing. The petitioner had raised this same claim in his post-conviction petition in the Ohio state court, but that court dismissed the claim on the grounds that it should have been raised on direct appeal and therefore was barred

by Ohio's res judicata rule.  We agreed with the district court that we could consider the merits of the claim, despite the state court's res judicata ruling, because the claim depended on evidence outside the trial record and therefore could not have been raised on direct appeal.  *Id.*; *accord Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) (where an Ohio post-conviction court dismissed the petitioner's ineffective-assistance claim on the basis of Ohio's res judicata rule, we stated that "when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded"); *White v. Mitchell*, 431 F.3d 517, 526-27 (6th Cir. 2005) (reviewing an ineffective-assistance-of-counsel claim on the merits even though the Ohio courts deemed it procedurally defaulted under Ohio's res judicata rule); *Linscott v. Rose*, 436 F.3d 587, 592 (6th Cir. 2006) (stating that, "[w]e find it difficult, based on the limited record before us, to effectively evaluate whether the Ohio court properly concluded, if it concluded at all, that Linscott procedurally defaulted his psychiatric evaluation claim").

Just as in *Hill* and *Greer*, Richey's ineffective-assistance claim depends on evidence outside the trial record.  Although the simple absence of competing scientific evidence is apparent from the trial record, the only way that Richey could make out a violation of his constitutional rights was to adduce evidence establishing what his counsel would have learned about the State's arson evidence and how to countermand that evidence, had his counsel performed effectively.  This necessarily required evidence outside the record, and it is exactly the kind of evidence that Richey submitted with his state post-conviction petition, and further developed through discovery in the district court.  Richey presented the affidavits of Armstrong and Custer, who opined that the scientific methodologies and conclusions of the State's experts were flawed and that the fire likely started accidentally.  Richey also presented the deposition testimony of DuBois and Kluge, which showed Kluge's lack of oversight of DuBois's minimal work and lack of preparation in seeking to undermine the State's scientific findings.  None of this testimony was available to Richey on direct appeal precisely because, under Ohio law, direct appeals are confined to the trial record.  Had Richey asserted his ineffective-assistance-of-counsel claim on direct appeal, then, he would have lost.  Without evidence showing what kind of scientific defense a reasonably competent attorney would have mounted, the state court would have had no basis for concluding that Richey's counsel was deficient and that Richey was prejudiced thereby.  Indeed, we recently granted habeas relief on an ineffective-assistance-of-counsel claim where the petitioner's attorney raised the claim improperly on direct appeal, rather than in post-conviction proceedings where the petitioner could have supported the claim with evidence.  In *Williams v. Anderson*, 460 F.3d 789, 800-01 (6th Cir. 2006), we held as follows:

> Here, Petitioner's appellate counsel performed below an objective standard of reasonableness by raising Petitioner's ineffective assistance of trial counsel claim on direct appeal despite the absence of evidence in support of the claim in the record.  It is well-established in Ohio law that where an ineffective assistance of counsel claim cannot be supported solely on the trial court record, it should not be brought on direct appeal. . . .  Thus, but for counsel's unreasonable decision, Petitioner would have been able to support his meritorious claim with the necessary evidence in post-conviction proceedings.  Accordingly, counsel's conduct prejudiced Petitioner.

For these reasons, we hold that grounds one and three identified by the Supreme Court in its opinion remanding the case—that Richey's trial counsel "(1) inadequately cross-examined experts called by the State," and "(3) failed to present competing scientific evidence against the State's forensic experts"—are not procedurally defaulted, and we properly reached the merits of Richey's claim in our prior opinion.

The second procedural-default issue identified by the Supreme Court—whether Richey's counsel "erred by prematurely placing the forensic expert counsel had hired on the witness

list"—has to do with evidence showing that Richey's trial counsel disclosed DuBois as an expert witness at trial before he knew the substance of DuBois's testimony. The district court determined that this claim was procedurally defaulted because it should have been raised on direct appeal. We agree that the claim is procedurally defaulted, but disagree that the reason for the default is Ohio's res judicata rule. It would have been impossible to assert that Richey's trial counsel performed incompetently in prematurely disclosing DuBois as a trial witness without developing the facts regarding what Richey's counsel knew about DuBois's scientific conclusions at the time he disclosed him. No such evidence was contained in the trial record, and thus the claim could not have been brought on direct appeal.

Rather, we conclude that the claim is defaulted because it was never presented to the state courts at all. Richey alleged in his state post-conviction petition that his counsel was deficient in disclosing DuBois as a defense expert "even after he had learned that DuBois would not offer testimony favorable to Richey." (JA 1075.) This is the opposite of what Richey has argued in his federal habeas proceedings (after he had the benefit of discovery), namely, that his trial counsel disclosed DuBois prior to knowing what DuBois's conclusions were, and prior, therefore, to knowing whether DuBois would help or hurt Richey's defense. The state court thus did not have the opportunity to rule on Richey's claim.

We must now consider whether Richey's default may be excused on grounds of "cause and prejudice." "To show cause, a petitioner must show that some objective factor external to the defense impeded . . . his efforts to comply with the State's procedural rule." *Burroughs v. Makowski*, 411 F.3d 665, 667-68 (6th Cir. 2005) (per curiam) (internal quotation marks and citation omitted). To show prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Even if Richey can satisfy the "cause" requirement, he cannot establish prejudice. His counsel's purported error resulted in DuBois testifying for the prosecution but DuBois's testimony was cumulative to that of the State experts. Accordingly, we hold that Richey procedurally defaulted ground two identified by the Supreme Court and that (under the State's analysis), we should not have considered it on the merits.

#### 4.          *Habeas Relief is Still Warranted*

Under the remand analysis urged by the State, we conclude that in our original disposition, we improperly considered two grounds in support of Richey's ineffective-assistance claim, namely, DuBois's alleged lack of qualifications to offer an expert opinion on the source of the fire, and Kluge's alleged error in prematurely placing DuBois on the trial witness list. We hold that even eliminating these two considerations from our merits analysis, ample evidence exists establishing that the state courts unreasonably applied *Strickland* in holding that Richey had received constitutionally effective assistance of counsel.

To establish ineffective assistance of counsel, a habeas petitioner must show both deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). A lawyer is deficient when his performance falls below an objective standard of reasonableness. A defendant is prejudiced by his lawyer's deficient performance where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We need not conduct a wholesale reexamination of the merits of Richey's claim. Instead, we rely on the analysis in our prior disposition, excluding, of course, the two issues we now determine (under the State's proposed analysis at least) we should not have considered. A few points are worth reiterating, however.

First, at trial, the State put forth a specific theory of how Richey set the fire. The State did not rest on the circumstantial witness testimony tying Richey to the fire. The State instead maintained that Richey stole paint thinner and gasoline from the greenhouse across the street, brought them back to Collins's apartment where he poured them on her living room carpet and deck, and ignited them. The State supported its theory with detailed scientific testimony from Cryer and Gelfius. Cryer's testimony alone exceeded in length that of every other penalty-phase witness in the case, except for Collins, the victim's mother.

The scientific evidence of arson was thus fundamental to the State's case. Yet Richey's counsel did next to nothing to determine if the State's arson conclusion was impervious to attack. True, Richey's counsel retained DuBois to review the State's arson evidence, so this case does not exemplify that most egregious type, wherein lawyers altogether fail to hire an expert. But the mere hiring of an expert is meaningless if counsel does not consult with that expert to make an informed decision about whether a particular defense is viable. *See Strickland*, 466 U.S. at 691 (stating that defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). At bottom, the record shows that Richey's counsel did not conduct the investigation that a reasonably competent lawyer would have conducted into an available defense—that the fire was not caused by arson—before deciding not to mount that defense.

"A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance." *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006) (quoting *Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir. 1999)). Here, Richey's counsel appeared unconcerned about the State's scientific evidence from the very beginning. Although he was aware of the State's arson theory in July, Kluge did not contact DuBois until September and did not authorize him to begin work on the case until mid-November, just two months before the start of the trial. By the time DuBois advised Kluge in December that he agreed entirely with the State, Kluge might have been prevented by the imminence of trial from obtaining another expert, even had he formed misgivings about DuBois. Even more importantly, it is inconceivable that a reasonably competent attorney would have failed to know what his expert was doing to test the State's arson conclusion, *see* JA 2926 (Kluge testifying that he did not learn "until well after the trial" that DuBois had not performed his own independent testing), would have failed to work with the expert to understand the basics of the science involved, at least for purposes of cross-examining the State's experts, and would have failed to inquire about why his expert agreed with the State. A lawyer cannot be deemed effective where he hires an expert consultant and then either willfully or negligently keeps himself in the dark about what that expert is doing, and what the basis for the expert's opinion is. Even DuBois expressed astonishment at Kluge's ready acquiescence to his conclusion that the State was right. DuBois testified that Kluge "was surprisingly nonargumentative with me or didn't challenge me on what I thought or why I thought what I did or anything. I was surprised at how unbiased he was about that, and I still am today." (JA 6361.)

The point is not that Kluge had a duty to shop around for another expert who would refute the conclusions of DuBois and the State's experts. The point is that Kluge had a duty to know enough to make a reasoned determination about whether he should abandon a possible defense based on his expert's opinion. *See Rompilla v. Beard*, 545 U.S. 374, 387 (2005) ("It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.")

(quoting 1 ABA Standards for Criminal Justice 4-4.1 (2d ed. 1982 Supp.)). Having simply been served up with DuBois's flat agreement with the State, and not having known either what DuBois did to arrive at his conclusion or why he came out where he did, Kluge was in no position to make this determination. *See id.* at 374 (holding that trial counsel performed deficiently when they failed to investigate a court file containing mitigating evidence even though they pursued other avenues of unearthing mitigating information, including interviewing the defendant and his family members and consulting mental-health professionals); *Wiggins*, 539 U.S. at 527 (stating that "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision"); *Driscoll v. Delo*, 71 F.3d 701, 709 (8th Cir. 1995) (holding that even where defense counsel elicited a concession from the state's expert that whether a particular blood type was on a knife was entirely speculative, defense counsel was defective for having failed to take measures "to understand the laboratory tests performed and the inferences that one could logically draw from the results"); *Dugas v. Coplan*, 428 F.3d 317, 328 (1st Cir. 2005) (holding that where defense counsel visually inspected the fire scene himself, talked with the state's experts, did some limited reading, and talked with other defense attorneys, he nonetheless failed to adequately investigate an available "no arson" defense).

As we stated in our prior opinion, we can discern no strategic reason why counsel would have so readily ceded this terrain to the prosecution. Nor was it sufficient for counsel to attempt to poke holes in the State's arson case by focusing on the identity of the arsonist. At the very least, Richey's comments the night of the party and the defense's failure to point the finger at any other possible culprit, made such a choice unreasonable. Moreover, where counsel knew that there were gaps in the State's proof having to do with the lack of accelerants on Richey's boots and clothing, and the greenhouse owner's inability to say that any accelerants were missing, investigating the scientific basis for the State's arson conclusion became all the more imperative. *Dugas*, 428 F.3d at 331 (stating that challenging the State's arson case was crucial where defense counsel was aware of problems with the arson evidence).

The testimony of experts such as Armstrong and Custer, both of whom have stated they would have testified on Richey's behalf had they been contacted, would have severely undermined the State's case against him. Armstrong and Custer would have attacked the State's gas chromatography analysis as unsound and out of step with prevailing scientific standards; they would have disputed the State's conclusion that any of the samples contained traces of gasoline or paint thinner; they would have testified that the burn patterns, about which Cryer made so much, were just as consistent with a naturally occurring fire; and they would have rejected Cryer's contention that the fire's speed was indicative of arson, explaining that modern furnishings cause fires to burn more rapidly. Finally, they would have testified that the most likely cause of the fire was a cigarette smoldering in the cushions of Collins's couch.

There can be little doubt that Richey was prejudiced by his counsel's deficient performance. There is a reasonable probability that had his counsel mounted the available defense that the fire was caused by an accident, and was not the result of arson at all, the outcome of either the guilt or the penalty phase would have been different. Although the circumstantial evidence alone might have led to a conviction, the question before us is not one of the sufficiency of the evidence, but of undermining our confidence in the reliability of the result. In addition, witnesses are not always believed. Confronted with evidence debunking the State's scientific conclusions, the trial court might have had a reasonable doubt about Richey's guilt, especially where the prosecution's case depended on a cast of witnesses whose lives revolved around drinking and partying and some of whom might have had their own motives for implicating Richey.

### III. CONCLUSION

The Supreme Court remanded this case with instructions for us to re-consider the procedural propriety of our ruling that the state courts unreasonably applied *Strickland* in determining that

Richey had received constitutionally adequate representation at his trial. Richey and the State have advanced different interpretations of the Supreme Court's remand language. Under either interpretation, we conclude that we properly reached and considered the merits of Richey's ineffective-assistance claim in our prior disposition. Moreover, because the deficient performance of Richey's counsel undermines our confidence in the outcome of his trial, and because we believe that the Ohio state courts unreasonably applied *Strickland* in determining otherwise, we reverse the judgment of the district court and remand with instructions to enter a conditional writ of habeas corpus, giving the State of Ohio ninety days to retry Richey or release him.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

SILER, Circuit Judge, concurring in part and dissenting in part. Before this case was appealed to the Supreme Court and remanded, I dissented from the majority opinion in *Richey v. Mitchell*, 395 F.3d 660, 688 (6th Cir. 2005). I now concur in part and dissent in part, consistent with my previous dissent.

First, I agree with the majority that the State waived certain objections under *Holland v. Jackson*, 542 U.S. 649 (2004) (per curiam). Therefore, we can consider the evidence provided to the district court but which was not discovered in the state court proceedings. I also concur in the majority's conclusion that Richey did not rebut the state court's determination that Gregory DuBois was a qualified expert. Finally, I concur with the majority in determining that the issue of whether Richey's counsel erred by prematurely placing the forensic expert's name on the witness list was procedurally defaulted, so we cannot consider the question. However, I depart from the majority when it concludes that the state courts unreasonably applied the law from *Strickland v. Washington*, 466 U.S. 668 (1984), in holding that Richey had constitutionally effective assistance of counsel.

As I stated in my previous dissent, *Richey*, 395 F.3d at 690, I agree that the issue is not totally procedurally defaulted, but I disagree with the majority on the question of deficient performance. It is not necessary to determine prejudice, because I would find that the Ohio Court of Appeals did not unreasonably apply *Strickland* in concluding that there was no ineffective assistance of counsel. Since we have already determined that DuBois was a properly qualified expert, we cannot now complain that it was error by counsel to employ him in the case. The majority criticizes counsel for his failure to determine if the State's arson conclusion was impervious to attack. Yet the expert, DuBois, later agreed entirely with the State's experts. Certainly, counsel should have consulted with DuBois earlier in the case, but since DuBois eventually agreed that the State's conclusion of arson was correct, it would have been of no value to have learned that earlier.

As the majority observes, counsel did not have a duty to shop around for another expert who would refute the conclusions of DuBois and the State's experts. Years later, Richey found the experts, Andrew Armstrong and Richard Custer, who have now said that they could have undermined the case against Richey. However, counsel does not have a duty to "continue looking for experts just because the one he has consulted gave an unfavorable opinion." *Dees v. Caspiri*, 904 F.2d 452, 454 (8th Cir. 1990) (per curiam). Unless counsel has reason to doubt the objectivity of an expert, the failure to obtain a new impartial expert will not be objectively unreasonable. *See Jones v. Murray*, 947 F.2d 1106, 1112 (4th Cir. 1991).

Even if the Ohio court applied *Strickland* incorrectly, that is not sufficient under the law. Instead, Richey must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002). Richey has not shown that here. Therefore, I would not find that the decisions of the Ohio courts were contrary to or unreasonable applications of federal law as interpreted by the Supreme Court. Thus, I would affirm the decision of the district court in denying the petition for a writ of habeas corpus.