PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No  09-2185
_____

JUDY ANN SHOWERS

v.

JEFFREY BEARD,
Commissioner, Pennsylvania Department of Corrections;
WARDEN MARTIN DRAGOVICH;
NORTHUMBERLAND DISTRICT ATTORNEY,
                                                        Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-03-cv-02264)
District Judge:  Honorable A. Richard Caputo
_____

Argued December 13, 2010

Before: SLOVITER, GREENAWAY, JR., and
STAPLETON, Circuit Judges

(Filed: March 28, 2011)
_____

William C. Cole
Office of District Attorney
Sunbury, PA  17801

Amy Zapp    (Argued)
Office of Attorney General of Pennsylvania

Harrisburg, PA 17120

Attorneys for Appellants

Caroline M. Roberto  (Argued)
Pittsburgh, PA  15219

Attorney for Appellee

_____

OPINION OF THE COURT
_____


SLOVITER, *Circuit Judge*.

Appellants – Pennsylvania Department of Correction Commissioner Jeffrey Beard, SCI-Muncy Warden Martin Dragovich, and the Northumberland District Attorney (hereinafter "Commonwealth") – appeal the District Court's order granting the petition for a writ of habeas corpus sought by Appellee Judy Ann Showers under 28 U.S.C. § 2254.

**I.**

On March 23, 1994, a jury convicted Showers of first degree murder of her husband.  Showers was represented by Michael Rudinski at the trial where it was established that the cause of her husband's death was an orally consumed lethal dose of liquid morphine, otherwise referred to by the brand name Roxanol.

The Commonwealth argued that Showers surreptitiously administered the lethal dose.  It relied on circumstantial evidence and the testimony of its expert witness Dr. Isidore Mihalakis, M.D., a forensic pathologist, that Roxanol is capable of being masked.  The defense argued that the deceased committed suicide.  Showers was sentenced to life imprisonment without parole.

Showers retained William Costopoulos as her appellate counsel who timely filed a direct appeal to the Pennsylvania Superior Court. Costopoulos raised several issues but did not argue that trial counsel was ineffective for failing to call an expert witness in rebuttal. The Superior Court affirmed. *Commonwealth v. Showers*, 681 A.2d 746, 757 (Pa. Super. Ct. 1996) ("*Showers I*").[1]

Showers retained new counsel, Caroline Roberto, to file a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541 *et seq.* In the petition, Showers claimed for the first time ineffective assistance of both her trial and appellate counsel. She asserted that her trial counsel failed to present rebuttal expert testimony regarding the properties of Roxanol, and that her appellate counsel was ineffective for failing to raise the same on direct appeal.

At the evidentiary hearing on the PCRA petition, Showers presented the testimony of Dr. Cyril Wecht, M.D., J.D., then Coroner of Allegheny County, and a nationally recognized and acclaimed forensic pathologist. Dr. Wecht testified, to a reasonable degree of medical certainty, that the lethal dose could not have been administered surreptitiously or forcefully and that Showers' husband likely committed suicide. Dr. Wecht also testified that he would have testified the same if he had been called as a witness during the jury trial in 1994.

Showers also presented the testimony of Dr. Harry Doyle, a psychiatrist retained by the defense at the time of the trial to investigate the state of mind of Showers' husband. Dr. Doyle determined that the central question was whether the morphine was taken voluntarily or surreptitiously, but did not

---

[1] The Pennsylvania Supreme Court denied a petition for allowance of appeal. *Commonwealth v. Showers*, 685 A.2d 544 (Pa. 1996). The United States Supreme Court denied a petition for writ of certiorari. *Showers v. Pennsylvania*, 520 U.S. 1213 (1997).

have the necessary scientific background to testify regarding the properties of Roxanol. He therefore advised Rudinski to secure a qualified expert to address the impossibility of disguising Roxanol, and provided him with contact information for three potential witnesses. Rudinski did not contact any of those experts.

At the PCRA hearing, Rudinski testified that he believed that Helen Wolfe, a lay witness friend, would be the most reliable witness regarding whether Roxanol can be disguised.[2] Rudinski testified that he did not cross-examine Dr. Mihalakis about the absence of a masking substance because he "recall[ed]" that there was some other type of fluid found in the deceased's stomach. App. at 250. Rudinski explained that he did not ask Dr. Mihalakis additional questions regarding the lack of any evidence of force because it "can be very dangerous" to ask questions for which "you don't know all of the answers." App. at 251.

Costopoulos, Showers' appellate counsel, testified that he relied solely on the record, and did not conduct an independent investigation to determine whether to pursue the issue of the failure of trial counsel to call a contrary expert. App. at 273. Significantly, he stated that "if [he] had to do it over again, having lost on direct appeal with the issues [he]

---

[2] Wolfe, who was a friend of the deceased as well as a cancer patient, had been prescribed Roxanol. She testified that there is no way to mask the taste of Roxanol. She also testified that the deceased had administered Roxanol to her and had asked pharmacists about how to administer it properly. Wolfe testified that the deceased knew "more about liquid Roxanol" than she did even though she was a nurse. App. at 22. The dissenting Superior Court judge suggested that Wolfe was biased and unknowledgeable. *Commonwealth v. Showers*, 782 A.2d 1010, 1024 (Pa. Super. Ct. 2001) (Tamilia, J., dissenting). There was evidence that Wolfe previously had an affair with the deceased and Wolfe's sister was having an affair with him at the time of his death. *Showers v. Beard*, 586 F. Supp. 2d 310, 313 (M.D. Pa. 2008).

had raised, [he] absolutely would have raised [trial counsel's failure to call an expert on rebuttal]." App. at 274.

The court denied the PCRA petition, finding that Rudinski had made diligent efforts to locate an expert witness and that he vigorously cross-examined Dr. Mihalakis. Showers appealed to the Pennsylvania Superior Court. A two-judge majority of the Superior Court affirmed the PCRA judgment. With respect to Showers' argument regarding the failure to call an expert witness, the Superior Court found that Rudinski adequately addressed the issue in his cross-examination of Dr. Mihalakis and in his closing argument. *Commonwealth v. Showers*, 782 A.2d 1010, 1021 (Pa. Super. Ct. 2001) ("*Showers II*"). With respect to appellate counsel, the Superior Court found that "[b]ased upon [] Costopoulos' articulation of reasons for not raising certain issues [on appeal]," Showers did not meet her burden of proof "to show that his course of action did not have a rational, strategic, or tactical basis." *Id.* at 1019 (quotation omitted). One member of the Superior Court panel filed a vigorous dissent. *Id*. at 1023-24 (Tamilia, J., dissenting).[3]

Showers timely filed the instant petition for writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA") seeking a new trial. Showers alleges that her trial counsel failed to present rebuttal expert testimony from an available forensic pathologist, and appellate counsel failed to preserve the issue. The District Court granted Showers' petition on this ground. *Showers v. Beard*, 586 F. Supp. 2d 310 (M.D. Pa. 2008) ("*Showers III*"). The Commonwealth's appeal followed.

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Our review of the District Court's decision is

---

[3] The Pennsylvania Supreme Court denied Showers' petition for allowance of appeal. *Commonwealth v. Showers*, 814 A.2d 677 (Pa. 2002).

plenary. *See Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010). Under AEDPA, where, as here, a habeas petitioner's claims were adjudicated on the merits in state court, our review is limited to determining whether the state court decision was contrary to or involved an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d). Our review is "doubly deferential:" the state court was obligated to conduct deferential review of counsel's performance and we must give deference to the state court rulings under AEDPA. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

As a preliminary matter, we reject the Commonwealth's objections to our consideration of this appeal. We conclude that Showers preserved the instant claims and the Commonwealth has waived its procedural default argument, raising this issue for the first time after over a decade of post conviction litigation.[4] *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (in habeas context, procedural default is normally a defense the Commonwealth is obligated to raise).

Showers properly layered her claims in the collateral proceedings.[5] Under Pennsylvania law, where ineffectiveness claims are properly layered, there is no waiver and no procedural default. *Siehl v. Grace*, 561 F.3d 189, 193-94 n.3 (3d Cir. 2009) (If the claims as to trial counsel have merit, a

---

[4] The PCRA court and the Superior Court addressed the ineffectiveness claims against both trial and appellate counsel on the merits.

[5] Prior to *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), which held ineffectiveness claims should be raised collaterally, "defendants were required to raise all claims alleging ineffective assistance at the first stage at which they were represented by new counsel." *Commonwealth v. Fletcher*, 986 A.2d 759, 773 n.16 (Pa. 2009). The change in law effected by *Grant* does not apply retroactively to Showers. *See Commonwealth v. Bethea*, 828 A.2d 1066, 1070 n.2 (Pa. 2003).

similar determination will likely be made regarding claims as to appellate counsel, "in which event there would be no waiver under Pennsylvania's layering of ineffective assistance line of cases," and "no procedural default by virtue of the doctrine of cause and prejudice.") (quotation omitted). As a result, in reviewing the Superior Court's decision, the District Court properly evaluated trial counsel's performance on the merits as a necessary predicate for evaluating appellate counsel's performance. *See Commonwealth v. Rush*, 838 A.2d 651, 656 (Pa. 2003) ("[W]hen a court is faced with a 'layered' claim of ineffective assistance of counsel, the only viable ineffectiveness claim is that related to the most recent counsel, appellate counsel."). We thus turn to the merits.

Coincidentally, shortly after this case was argued before this court, the Supreme Court issued an opinion in a case where a petitioner convicted of murder in a state court sought a writ of habeas corpus on the ground of ineffective assistance. Because of what may appear to be facial similarity between that decision, *Harrington v. Richter*, 131 S. Ct. 770 (2011), and the one before us, we asked the parties to file supplemental memoranda regarding the effect of that decision on the issues in this case.

Richter was convicted of the murder of Klein largely on the testimony of Johnson, a drug dealer with whom Richter and Klein had been smoking marijuana on the day at issue. Johnson testified that he and Klein were shot by Richter and Branscombe in Johnson's apartment. *Richter*, 131 S. Ct. at 781-82. Richter's defense attorney sought to show that Klein was shot in the bedroom doorway but the prosecution introduced expert testimony based on Klein's blood pattern that Klein was shot near the living room couch. Although Richter's attorney called seven witnesses, the jury found Richter guilty. *Id.* at 782. The California Supreme Court rejected Richter's *Strickland* claims by summary denial, and the District Court agreed. *Id.* at 783. The Ninth Circuit reversed by a divided en banc vote, holding the California decision was unreasonable because Richter's trial counsel was deficient for failing to consult experts on blood evidence. The Supreme Court granted certiorari and reversed

7

the decision of the Ninth Circuit, holding the Court of Appeals erred in finding that Richter's attorney was deficient under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating ineffective assistance of counsel claims.[6]

In the response of Showers' attorney to this court's request for comment, she stated that habeas review "remains robust [as] evidenced by the many cases in which the Supreme Court has granted relief because a state court adjudication of a meritorious constitutional claim was 'unreasonable' or 'contrary to' Supreme Court precedent, or was based upon an unreasonable factual determination."[7]

In *Richter*, the Supreme Court stated "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below

---

[6] First, a petitioner "must show that counsel's performance was deficient" in that it fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687. Second, a petitioner must show that the deficiency prejudiced the defense. *Id.* at 694 (prejudice, if reasonable probability that, but for counsel's errors, result "would have been different"). *See also Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (Pennsylvania standard judging ineffectiveness claims is identical to the *Strickland* standard).

[7] She noted the recent decisions in *Sears v. Upton*, 130 S. Ct. 3259, 3261 (2010) (granting relief because state court misapplied *Strickland* prejudice standard); *Porter v. McCollum*, 130 S. Ct. 447, 448 (2009) (awarding habeas relief because state court's determination that petitioner did not suffer *Strickland* prejudice "unreasonable"); *Miller-El v. Dretke,* 545 U.S. 231, 235 (2005) (granting habeas relief under AEDPA); *Rompilla v. Beard*, 545 U.S. 374, 393 (2005) (same); *Wiggins v. Smith*, 539 U.S. 510, 538 (2003) (same); *Williams v. Taylor*, 529 U.S. 362, 367 (2000) (same).

*Strickland's* standard." 131 S. Ct. at 785. The Court then proceeded to explain "that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 786 (quotation omitted). The Court noted that even under *de novo* review the standard for judging counsel's representation is a most deferential one; the question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id.* at 788 (quoting *Strickland*, 466 U.S. at 690).

The *Richter* Court held that in a habeas proceeding whether a state court is "within the bounds of a reasonable judicial determination . . . to conclude that defense counsel follow a strategy that did not require the use of experts" depends on the specific circumstances of the case. *Id.* at 789. Based on the facts in *Richter*, the Supreme Court concluded that it was reasonable for the state court to find that Richter's defense counsel was not ineffective for failing to consult forensic blood experts or introduce expert evidence. *Id*. at 789-90. In discussing the circumstances, the Supreme Court stated that the potentially exculpatory forensic evidence was not apparent at the time of the trial. *Id*. at 789 (*Strickland* and AEDPA prevent "[r]eliance on the harsh light of hindsight to cast doubt on a trial that took place now more than 15 years ago.") (quotation omitted). Further, the Supreme Court reasoned that even if expert testimony had been available, defense counsel was entitled not to use it because there was a "serious risk" that it could have "destroy[ed]" the defendant's case and distracted the jury from assessing the credibility of the defendant's testimony. *Id*. at 790. The Court concluded that counsel in *Richter* put on a thorough defense, vigorously cross-examined the prosecution's expert, and called seven witnesses, including the defendant himself. *Id*. at 782, 791.

The facts in *Richter* were radically different from the facts and circumstances here. The dissenting judge in the Pennsylvania Superior Court stated that "[t]he defining issue in this matter is whether the victim, who according to the Commonwealth's theory unknowingly ingested a toxic substance, Roxanol (liquid morphine), would have or could

9

have done so without any evidence that the drug's acute bitterness was masked so as to conceal its presence." *Showers II*, 782 A.2d at 1023 (Tamilia, J., dissenting). The properties of Roxanol and the autopsy results were known well before the trial. If Roxanol could not be masked by another substance, the only plausible explanation for the manner of death would have been willing, self-administration. The Commonwealth's evidence in the case against Showers, other than expert testimony regarding the properties of liquid morphine, was wholly circumstantial, making scientific evidence all the more important. *See Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008) ("It is especially important for counsel to seek the advice of an expert when he has no knowledge or expertise about the field."). Dr. Doyle provided Showers' counsel with the names of three experts but counsel failed to consult even one of the three experts that Dr. Doyle had already suggested would have supported the defense's suicide theory.

The Superior Court rejected Showers' claim that Rudinski, Showers' defense counsel, was deficient because his cross-examination of the Commonwealth's expert effectively elicited testimony helpful to the defense. *Showers II*, 782 A.2d at 1021. The District Court concluded that the Superior Court's decision was unreasonable. After Dr. Doyle told Rudinski that he was not qualified to testify to the crucial properties of Roxanol, "it was incumbent upon Attorney Rudinski to produce" an expert who could so testify. *Showers III*, 586 F. Supp. 2d at 329. The record reflects "little meaningful effort" on Rudinski's part to do so. *Id*.

Although Rudinski elicited testimony from Dr. Mihalakis, the prosecutor's expert, that he had only tasted two drops of Roxanol for the purpose of the litigation and never tried the substance in a masking agent, this testimony was not nearly as strong as that which could have been provided by an expert, such as Dr. Wecht.[8] Rudinski relied on the testimony

---

[8] Questions posed by counsel themselves do not constitute evidence that can be considered by the jury and the trial court instructed the jury in this regard. *See* Pa. SSJI (Crim), §2.07

10

of Wolfe, who was hardly an expert on Roxanol. Indeed, Rudinski stated in his closing that Wolfe had only tried the drug once in a masking agent.[9] Her lack of expertise was further undermined by her suspect credibility. *See supra* note 2.

Rudinski failed to establish key facts that could have led a jury to find that Showers' husband voluntarily consumed the morphine. Most importantly, the defense failed to establish that a large dose of Roxanol cannot be masked without a large amount of liquid or food, if at all, and that no such substance was found in the deceased's stomach. Rudinski's failure to adequately question Dr. Mihalakis was based on Rudinski's flawed understanding of the facts. At the PCRA hearing, Rudinski testified that he did not ask follow-up questions regarding the masking agent because he believed that the autopsy revealed some other type of fluid in the deceased's stomach. There was no such evidence. *See* App. at 204-05. He likewise did not follow up on the lack of evidence of force because he feared asking questions for which he did not know the answers. This court agrees that it may be risky for an attorney to ask questions for which he believes the answer may be harmful. However, it is no excuse for failing to elicit significant evidence when the risk of an adverse response has been created by counsel's failure to conduct a thorough investigation or understand key, undisputed facts in the record. *See Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) ("To make a reasoned judgment

---

(2005) ("The questions that counsel put to the witnesses are not evidence."). To the extent the Superior Court reviewing the PCRA petition relied on the questions themselves in making this determination, such reliance is unreasonable.

[9] At the PCRA hearing, Rudinski testified that Wolfe took the drug on a daily basis to bolster his decision to rely on her testimony in lieu of an expert. However, this contradicts Rudinski's minimization of Wolfe's exposure to Roxanol in his closing statement to the jury.

about whether evidence is worth presenting, one must know what it says.").

Although Rudinski did prepare and present some evidence favorable to Showers at her trial, it was not outweighed by his serious omissions. Rudinski failed to investigate readily available key evidence in support of the defense's chosen theory, i.e., that Showers' husband committed suicide, or make a reasonable decision that investigation was unnecessary. *See Strickland*, 466 U.S. at 691 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). *See also Porter v. McCollum*, 130 S. Ct. 447, 449 (2009) (penalty phase representation found deficient where counsel "told the jury that [defendant] . . . was not mentally healthy" but failed to investigate or present readily available evidence which would have proven this very fact) (quotation omitted); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (attorney has duty to investigate all avenues leading to facts relevant to the merits); *Couch*, 632 F.3d at 246 (state court unreasonably rejected habeas petitioner's argument that counsel should have investigated causation defense where counsel ignored readily available evidence); *Dugas v. Coplan*, 428 F.3d 317, 329 (1st Cir. 2005) (representation found deficient where counsel failed to investigate "not arson" defense and seek expert assistance or educate himself on techniques of defending arson).

Although "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," *Strickland*, 466 U.S. at 689, even the most minimally competent attorney here would have consulted at least one of the experts suggested to him by Dr. Doyle. Testimony by any of the available experts would have injected significant doubt regarding Showers' guilt. Reliance on Wolfe was not objectively reasonable.

This court and others have overturned a state court on habeas review based on deficient performance even where experts had been consulted but defense counsel failed to seek a second opinion when the facts so warranted. *See, e.g.,*

12

*Hummel v. Rosemeyer*, 564 F.3d 290, 302 (3d Cir. 2009) (defense counsel's failure to obtain additional psychiatric evaluation of defendant's mental capacity to stand trial deficient because previous evaluations were equivocal and client's behavior would have put competent counsel on notice); *Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir. 2007) ("[T]he mere hiring of an expert is meaningless if counsel does not consult with that expert to make an informed decision about whether a particular defense is viable.").

We do not hold that defense attorneys must always enlist expert testimony but it depends on the specific circumstances of the case. The 1989 American Bar Association ("ABA") Guideline for Appointment and Performance of Counsel in Death Penalty Cases, which is informative, albeit not dispositive, calls for retention of expert witnesses when necessary or appropriate for preparation of the defense, adequate understanding of the prosecution's case and rebuttal of any portion of the prosecution's case at the guilt/innocence phase. § 11.4.1(D)(7). The District Court held that the 1989 Guideline is relevant for evaluating prevailing norms and provides added support for its conclusion that Rudinski provided deficient performance and that the Superior Court's contrary conclusion was unreasonable.[10] *See Hummel*, 564 F.3d at 297 ("The [ABA] standards are guides, but only guides, to what is reasonable."). We agree.

In the words of Judge Tamilia, the dissenting member of the Pennsylvania Superior Court: "[R]ebuttal testimony by

---

[10] The Supreme Court case cited by the Commonwealth for the proposition that ABA standards "do not have any special relevance for assessing attorney performance" is inapposite. Appellant's Br. at 30 (citing *Bobby v. Van Hook*, 130 S. Ct. 13, 20 (2009) (Alito, J., concurring)). In that case, the court of appeals used the wrong ABA standards, those from eighteen years after the defendant's trial, so the Court merely found that those standards did not speak to the current prevailing norms, not that the then effective standards would not be relevant.

an independent, credible expert witness was necessary to present to the jury the sharp, crucial contrast between voluntary and involuntary ingestion of a bitter toxic substance, the single most critical element in this case, as well as evidence or lack thereof relating to refluxation," such testimony was indisputably available, and it "would have been far more convincing to the jury than that of a lay witness friend." *Showers II*, 782 A.2d at 1023-24 (Tamilia, J., dissenting). Judge Tamilia continued, "Such inaction by counsel caused appellant irreparable harm, exemplifies ineffectiveness and cannot be excused." *Id*. at 1024.

With respect to the second prong of the *Strickland* ineffectiveness inquiry, the Superior Court found that Rudinski's closing argument sufficiently exploited gaps in the Commonwealth's evidence to overcome a finding of prejudice. *Id*. at 1021. The Court rested its conclusion on the belief that because the autopsy showed no masking agents in the deceased's stomach (even if Roxanol could be masked), a second expert would not have added anything and Rudinski could have made the same closing arguments. This conclusion is unreasonable and misreads the record.

It is established that closing arguments are not to be considered evidence and the jury in this case was repeatedly so instructed. *See* Pa. SSJI (Crim), §7.03 (2005) ("The speeches of counsel are not part of the evidence, and you should not consider them as such."). Moreover, as the District Court found, Rudinski's closing "simply posed a number of questions to the jury" failing to establish crucial links. *Showers III*, 586 F. Supp. 2d at 329. An expert such as Dr. Wecht would have testified to the amount of the masking agent necessary to disguise such a large dose of morphine, time of absorption, and analyzed the autopsy results accordingly. As found by the District Court and the dissenting member of the Superior Court, rebuttal testimony from a credible, objective expert witness such as Dr. Wecht would have cast serious doubt on the prosecution's case and there is a reasonable probability the outcome would have been different. It was unreasonable for the Superior Court majority to hold otherwise.

14

We also agree with the District Court that because the underlying claim of trial counsel's ineffectiveness has merit, "there is a reasonable probability that Showers' direct appeal would have been successful had appellate counsel adequately raised the issue." *Id*. at 331. As the District Court concluded, Rudinski's failure to raise the issue was "unreasonable and did prejudice the defense." *Id.*

The Superior Court determined that counsel made a tactical decision not to include all of the arguments on appeal. This court agrees that counsel need not, and should not, raise every non-frivolous claim but rather may select among them in order to maximize the likelihood of success on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Here, however, without conducting an independent investigation of the need to consult an expert rebuttal witness, counsel ignored an argument going directly to the issue of guilt that is "clearly stronger than those presented." *Id*. (quotation omitted). For example, appellate counsel included an argument challenging the sufficiency of the evidence, which rarely prevails. *See, e.g., United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008). The fact that counsel had a reason for exclusion, the desire not to "shotgun" the appellate court, does not excuse his performance. App. at 273.

The Commonwealth provides no argument that appellate counsel was not ineffective except insofar as it rejects the claim that trial counsel was ineffective. We agree with Showers that the Commonwealth has all but conceded the point. Thus, we conclude that the Superior Court's decision here is contrary to and an unreasonable application of clearly established federal law.

**III.**

15

Accordingly, we will affirm the judgment of the District Court granting habeas relief in the form of a new trial.[11]

---

[11] In light of our judgment, we will deny as moot Showers' alternative request that we remand to the District Court for the determination of her remaining habeas claims.

16