**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 14, 2011[*]
Decided August 19, 2011

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 10-2712 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| MARC E. THOMPSON, *Petitioner-Appellant,* | |
| | No. 09 C 7685 |
| *v.* | |
| | Suzanne B. Conlon, |
| UNITED STATES OF AMERICA, *Respondent-Appellee.* | *Judge.* |

**O R D E R**

Marc Thompson was convicted by a jury of nineteen counts, including wire fraud, use of fire to commit a felony, bankruptcy fraud, and money laundering. These convictions were the result of Thompson's plan to collect on a homeowner's insurance policy after a fire which caused the death of his mother, Carmen Thompson. Thompson was sentenced to 190 years'

---

[*] This successive appeal has been submitted to the original panel under Operating Procedure 6(b). After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

imprisonment. We affirmed his conviction and sentence on direct appeal. *See United States v. Thompson*, 523 F.3d 806 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 770 (2008). Thompson filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of trial counsel and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court declined to hold an evidentiary hearing and denied the petition. Thompson sought to appeal his ineffective assistance of counsel claim, and we granted a certificate of appealability on that issue. Because we find that trial counsel's chosen strategy was objectively reasonable, we affirm the district court's denial of the petition.

## I. BACKGROUND

The underlying events giving rise to Thompson's convictions are fully recited in our previous opinion, *see Thompson*, 523 F.3d at 808-09, but we summarize the facts pertinent to his ineffective assistance claim.

Following his divorce and the loss of his job, Marc Thompson began to borrow significant sums of money. Facing financial pressure, he began hiding assets from his ex-wife and creditors. In June 2001, Thompson moved his then 89-year old mother, Carmen, from California to Chicago to live with him. He had her California home sold, and spent the proceeds of the sale. In December 2001, Thompson raised his homeowner's insurance policy from $275,000 to $350,000.

Thompson later told his housekeeper that his mother had said she wanted to burn the house down. On August 8, 2002, Thompson brought his mother to the hospital with a burn injury on her shoulder. He first told hospital staff that she had fallen on the stove after he left the room. Later that night, however, he told staff that she was injured after he left her alone in the house. Suspicious of the injury and Thompson's inconsistent statements, the hospital called an elder abuse hotline, but eventually Carmen Thompson was released and Thompson brought her back to his home.

Three days later, a fire broke out in Thompson's basement. Neighbors said that Thompson left the house around 7:00 p.m., but Thompson told investigators that he left the house around 6:15 p.m., made a stop, and then attended a 7:05 p.m. movie at a theater located at 600 N. Michigan Avenue. At approximately 7:10 p.m., neighbors saw smoke coming out of Thompson's house, and called 911. Firefighters quickly extinguished the fire, but found Carmen Thompson in the basement, dead of smoke inhalation, about four feet from the fire's origin. The area underneath her body was untouched by the fire.

Thompson arrived home and told Chicago Police detectives that his mother acted in a psychotic manner, was taking medications, had previously burned herself, and had talked about committing suicide in the past. The investigation ended, and a medical examiner ruled Carmen Thompson's death a suicide. The detectives, however, were unaware of Thompson's neighbors' observations, Carmen Thompson's limited movement, and a codicil to Carmen Thompson's will dated one week before the fire that stated that she did not want to have an autopsy conducted and wished to be immediately cremated. Additionally, at the time of her death, Carmen Thompson had alcohol, Valium (prescribed to Marc Thompson), and an anti-psychotic drug in her system (prescribed to Carmen at Marc Thompson's request).

Fire Marshal Carmelita Wiley-Earls led the Chicago Fire Department's investigation into the fire's cause. She concluded that the fire had been caused by the ignition of a flammable liquid that had been poured or splashed in the basement of the house. On the night of the fire, Thompson called his insurance carrier, but waited until the following morning to call his sister to inform her of their mother's death. He ultimately collected over $600,000 in insurance claims as a result of the fire, most of which he transferred to an off-shore account. In 2003, Thompson filed for bankruptcy, and he later admitted to fraudulently concealing assets from the bankruptcy court and lying under oath.

Thompson was indicted, and the court appointed John L. Sullivan as his counsel. Prior to trial, Thompson requested that Sullivan be discharged as his attorney because Thompson felt that Sullivan did not sufficiently consult with him during trial preparation. The court did not discharge Sullivan, finding the consultation sufficient, but appointed Robert Clarke as co-counsel at Mr. Sullivan's request given the complex and challenging nature of the case.

At trial, Wiley-Earls testified without any objection from the defense. She concluded that the fire was "incendiary" in origin. She testified that she found "unusual" low burning in the basement at the point where a wall met the floor. She explained that in the absence of an accelerant, one would expect a "V" pattern of fire damage to form from the point of origin. In Thompson's house, however, she found uniform low burning that was not normal in a typical fire. Because one wall had the most concentrated charring and damage, Wiley-Earls determined that the fire had originated there, a few feet from where Carmen Thompson's body lay face down. Two cans of flammable liquid, each containing a residual amount of liquid and vapors, were also found nearby. Wiley-Earls acknowledged that these cans could have moved during the attempt to put out the fire, and was unable to say whether the contents from either can started the fire. Wiley-Earls also attempted to find a potential heat source. She eliminated a light switch near the area of origin and ruled out the furnace's pilot light because there was no damage whatsoever to the furnace. She testified that she looked for any other possible accidental causes and found none.

Wiley-Earls also testified to smelling a chemical at the scene, but did not at that time test for accelerants. Although some portion of the basement's wall materials were sent for laboratory testing for the presence of accelerants, Wiley-Earls never received any test results. One report showing negative test results on debris for accelerants was not introduced by the government, but was provided to trial counsel. Thompson's trial counsel brought out the fact that Wiley-Earls never received the results of the materials she had submitted for testing, but trial counsel did not cross examine Wiley-Earls on whether testing was recommended or required by National Fire Protection Association or other standards. The defense did not call an arson expert, and offered a theory that Carmen Thompson had committed suicide.

The defense called four witnesses: Thompson's son William, Thompson's sister, a defense investigator, and Thompson himself. During Thompson's direct examination, he admitted to committing perjury both during his divorce proceedings and during his bankruptcy proceedings. He also admitted to tax fraud. On cross-examination, he was subject to additional questions regarding perjury, admitting that he had also committed perjury in defending a collection suit, that he had lied to his son's high school in order to obtain financial aid, and that he had hidden money from the IRS.

On direct appeal, Thompson raised a challenge based on the sufficiency of the evidence, arguing that Wiley-Earls's testimony was so conclusory that it did not provide enough support for a rational jury to find beyond a reasonable doubt that the fire was caused by arson. We rejected his argument, *see United States v. Thompson*, 523 F.3d at 812, finding that Wiley-Earls's testimony was but one part of the government's case. We found that the primary defense was that Carmen Thompson committed suicide, and therefore any negative test results for accelerants would not have supported the defense, and that there was sufficient circumstantial evidence, including Thompson's financial situation, the mysterious codicil to Carmen Thompson's will, and Carmen Thompson's previous burn incident, that allowed a rational jury to find that Marc Thompson caused the August 11th fire.

Thompson then filed a petition pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of trial counsel and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). As to his ineffective assistance claim, Thompson alleged that trial counsel failed in their duty to investigate. He argued that Sullivan and Clarke failed to seek the reports of lab testing on the fire debris, did not ask for a *Daubert* hearing, did not conduct meaningful cross-examination, and did not call a defense expert to refute the arson allegation. Thompson also argued that trial counsel failed to advise him on his decision to testify in his own defense.

In support of his petition, Thompson submitted a 2009 report from Dr. Craig Beyler, a fire expert, which concluded that Wiley-Earls's findings were inaccurate. Dr. Beyler wrote that

the burn pattern was likely made by the melting of the foam core of a door and not the ignition of an accelerant. He opined that the evidence showed that the point of origin of the fire was in the ceiling, not the floor, and stated that Wiley-Earls's analysis of the potential sources of the fire, including the light switch, was incomplete. He concluded that using scientific methods, the fire "has not been shown to have involved the pouring of a flammable liquid and ignition of that liquid by an open flame," and that "the cause of this fire should properly be classified as undetermined."

The government filed an answer to the petition and attached an affidavit from one of Thompson's trial lawyers, Robert Clarke. John Sullivan did not submit an affidavit. Clarke stated that Thompson himself "unambiguously demanded that Mr. Sullivan and I advance the theory" that Carmen Thompson committed suicide by setting the fire. Clarke also stated that a suicide theory was "also the strategy most likely to lead to an acquittal, as it was the only theory of the case that would account for, and provide a reasonable explanation regarding, *all* of the evidence that was likely to be presented at trial." (Emphasis in original). Clarke stated that an expert opinion that the cause of the fire was undetermined would not have made a trial strategy based on an accidental fire "advisable." Finally, Clarke stated that he warned Thompson about the risks of testifying, and that he believed Sullivan had as well.

The district court declined to hold an evidentiary hearing and denied the petition. Thompson sought to appeal his ineffective assistance of counsel claim, and we granted a certificate of appealability on that issue.

## II. ANALYSIS

Upon a denial of a § 2255 motion, we review the district court's findings of fact for clear error and its rulings of law de novo. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). A § 2255 petitioner is entitled to an evidentiary hearing on his claim where he alleges facts that, if true, would entitle him to relief. *Id.; Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010). A hearing, though, is not required when "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004). This court reviews a district court's decision not to grant an evidentiary hearing for abuse of discretion. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002).

In order to succeed on a claim of ineffective assistance of counsel, Thompson must demonstrate both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). Specifically, he must show that defense counsel's performance fell "outside the wide range of professionally competent assistance" and "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010). Our review of the effectiveness of counsel's assistance is "highly deferential," *Strickland*, 466 U.S. at 689; *Earls v. McCaughtry*, 379 F.3d 489, 494 (7th Cir. 2004), and we give "wide latitude for behavior stemming from trial strategies," *Earls*, 379 F.3d at 494.

Thompson argues that defense counsel failed to make a reasonable investigation regarding the cause of the fire, and accepted Wiley-Earls's conclusions without consulting an independent expert. It is well established that trial counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary." *Strickland*, 466 U.S. at 691; *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006).

In his affidavit, Robert Clarke acknowledged that an expert was not sought to counter the government's arson theory, but stated that Thompson himself "demanded" that Sullivan and Clarke advance a theory that Carmen Thompson committed suicide by setting the fire, and that such a defense was a plausible explanation given the additional evidence at trial. Thompson denied in a declaration that he had insisted on a suicide defense, and asserted that he asked counsel to seek an arson expert. The district court did not resolve the factual dispute, but found that even if the defense had pursued an "accidental" fire strategy, it would not likely have resulted in acquittal given the additional evidence, namely, the timeline of events, Thompson's financial situation, and Carmen Thompson's earlier burn injury. The district court found the "suicide" strategy objectively reasonable.

We have found that "[i]f the need for an expert was clear and one was reasonably available, counsel should at least consult with one." *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010) (citing *Miller v. Anderson*, 225 F.3d 455, 459 (7th Cir. 2001), *vacated by agreement of the parties*, 268 F.3d 485 (7th Cir. 2001)). Given the defense's chosen "suicide" strategy, the "need" for a fire expert who would have testified that the cause of the fire was either accidental or undetermined becomes less clear. While Thompson now calls into question the wisdom of that strategy, he cannot show that his lawyers's decision not to seek an arson expert was unreasonable under prevailing professional norms.

Thompson relies in part on *Dugas v. Coplan*, 428 F.3d 317 (1st Cir. 2005) for the proposition that failure to consult an expert amounts to deficient performance. However, in *Dugas*, defense counsel specifically chose a "not arson" defense, and the court's inquiry was limited to whether "the investigation supporting [counsel's] pursuit of the defense was itself reasonable." The court specifically emphasized that "the question is not whether [defense counsel] should have presented a 'not arson' defense." *Id*. at 328. The court wrote that the chosen "not arson" defense depended on defense counsel's "ability to convince the jurors that

the State's experts might be wrong in concluding that the fire was arson." *Id*. At 329. Defense counsel, however, relied only on his own rudimentary knowledge about arson in presenting a "not arson" defense, and, given the facts as a whole, the First Circuit found that his failure to conduct a thorough investigation regarding the chosen defense amounted to deficient performance. In this case, by contrast, Thompson challenges the choice not to pursue a "not arson" defense, something the First Circuit specifically did not address in *Dugas*. Similarly, in *Showers v. Beard*, 635 F.3d 625 (3d Cir. 2011), the Third Circuit found counsel's performance deficient where counsel did not consult experts suggested to him, when those experts would have testified to a matter *supporting* Showers' chosen suicide defense. In that case, Showers was convicted of first degree murder and claimed that the lethal dose of morphine consumed by the victim was for the purposes of suicide. *Id*. at 627. The central issue in the case was whether the liquid morphine was capable of being disguised or "masked," an assertion, which, if contradicted by an expert, would have assisted the defense's chosen strategy. *Id*. Again, that is not the case here.

In *Richey v. Bradshaw*, 498 F.3d 344, 363 (6th Cir. 2007), the Sixth Circuit did fault defense counsel for failing to investigate whether a fire was in fact caused by arson, as the state planned to argue, before deciding not to mount a "not arson" defense. In *Richey*, the defendant made statements that the building housing his ex-lover would "burn" and that he would "torch" the place. *Id*. at 347. That night, a fire occurred in the unit directly above his ex-lover's apartment, killing a two-year old girl. The state put on two expert witnesses who testified to the use of accelerants, and supported the state's theory that Richey stole gasoline and paint thinner and used them to start the fire. *Id*. Defense counsel did retain someone to investigate the cause of the fire, but the investigator did not have any special expertise in arson investigations, and defense counsel did not inquire about the investigator's conclusion that the state's conclusion was correct. *Id*. at 347-48. The defense did not introduce any competing scientific evidence.

The Sixth Circuit found that counsel's performance was deficient. The court held that the scientific evidence of arson was "fundamental" to the state's case, and Richey's counsel did next to nothing to determine if the state's arson conclusion was subject to attack. *Id*. at 362. The court found that the record showed that "Richey's counsel did not conduct the investigation that a reasonably competent lawyer would have conducted into an available defense–that the fire was not caused by arson–before deciding not to mount that defense." *Id*. The court acknowledged that counsel did not have a duty to shop around for an expert that would have countered the state's conclusion, but that he "had a duty to know enough to make a reasoned determination about whether he should abandon a possible defense based on his expert's opinion." *Id*. at 363. The court, however, also stated that:

> . . . we can discern no strategic reason why counsel would have so readily ceded this terrain to the prosecution. Nor was it sufficient for counsel to attempt to poke holes in the State's arson case by focusing on the identity of the arsonist. At the very least, Richey's comments . . . and the defense's failure to point the finger at any other possible culprit, made such a choice unreasonable.

*Id*. In finding counsel's performance deficient, the court relied on the fact that defense counsel failed to provide a reasonable alternative defense. Here, by contrast, the suicide defense was reasonable in light of the evidence as a whole, including Thompson's own statements and Carmen Thompson's previous burn injury.

Thompson makes much of the fact that the district court did not comment on trial counsel's assertion that Thompson himself insisted on a suicide defense. We do not find that the district court's silence on this matter warrants an evidentiary hearing. Whether or not Thompson himself demanded the defense, it was an objectively reasonable strategy in light of the evidence. We give great deference to counsel's judgment, recognizing that there is a wide range of reasonable defense strategies, *Strickland*, 466 U.S. at 689; *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009), and we analyze the reasonableness of counsel's performance in the context of the facts of the particular case, *Strickland*, 466 U.S. at 688-89.

Additionally, we note that while the report submitted by Dr. Beyler may have shown that the cause of the fire was "undetermined," meaning that causes other than arson could not be ruled out, such a finding would not necessarily have altered the result at trial given the additional evidence, and therefore Thompson also fails to meet the prejudice prong of the *Strickland* standard. As we noted on direct appeal, there was "plenty of other evidence from which a rational jury could find that Thompson caused the fire," *Thompson*, 523 F.3d at 810, even a fire with an "undetermined" origin. To be sure, the relevant inquiry in this habeas matter does not concern the sufficiency of the evidence, rather, it is whether counsel's performance was constitutionally deficient, and if so, whether Thompson was prejudiced. *See, e.g., Richey*, 498 F.3d at 364 ("Although circumstantial evidence alone might have led to a conviction, the question before us is not one of the sufficiency of the evidence, but of undermining our confidence in the reliability of the result."). We, however, find that under these facts, the circumstantial evidence in this case, and the jury's ability to rely on such evidence, prevents a finding of prejudice. *See United States v. Reyes*, 270 F.3d 1158, 1169 (7th Cir. 2001) ("Circumstantial evidence is of equal probative value to direct evidence and in some cases is even more reliable.") (internal citations omitted).

The district court also made a determination that Thompson's affidavit was insufficient to meet his burden of showing that he was not warned of the risks of testifying, and found that

Thompson's statements lacked credibility. The district court found that Thompson "is an admitted perjurer, having lied under oath numerous times in his divorce and bankruptcy proceedings." The court also found that his claim was unsupported by the record as Thompson acknowledged his history of lying and fraud on direct examination. We normally "accord the district court's credibility findings exceptional deference," *Tezak v. United States*, 256 F.3d 702, 715 (7th Cir. 2001), but such deferential review comes after the district court has held an evidentiary hearing, *see, e.g., Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010). Where the only evidence before the district court consists of conflicting, sworn affidavits, this court has held that "a determination of credibility cannot be made on the basis of an affidavit." *Daniels v. United States*, 54 F.3d 290, 295 (7th Cir. 1995) (citing *Castillo v. United States*, 34 F.3d 443, 445 (7th Cir. 1994)). However, in this case, the credibility determination was not based on Thompson's affidavit, it was based on Thompson's previous commissions of perjury and his conduct at trial, a trial for which the district court judge was present. Accordingly, we do not disturb the district court's credibility determination, nor do we find the district court's denial of an evidentiary hearing on this matter to be an abuse of discretion.

Finally, Thompson also argues that trial counsel failed to move to exclude evidence of Carmen Thompson's earlier burn injury and hospital visit. Thompson argues that the exclusion of this evidence, along with a challenge to the government's expert, would have allowed a "no arson" theory to succeed. First, we decline to engage in a hypothetical reconstruction of a possible defense strategy. *United States v. Malone*, 484 F.3d 916, 920 (7th Cir. 2007) ("[W]e will not play 'Monday morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how best to handle a case.") (citations omitted). Furthermore, as the district court noted, the evidence was relevant to the government's case as well, and we cannot in hindsight say that there was reasonable probability that a challenge to the admission of the hospital visit would have succeeded. *See, e.g., Bond v. United States*, 77 F.3d 1009, 1014 (7th Cir. 1996) (finding that in raising ineffective assistance of appellate counsel argument for failure to raise a claim on appeal, petitioner "must show that if appellate counsel had raised the claim on direct appeal, there would have been a reasonable probability that it would have succeeded").

For the foregoing reasons, the judgment of the district court is AFFIRMED.