**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1361
_____

RICHARD CHIPPERO,
                    Appellant

v.

ATTORNEY GENERAL NEW JERSEY;
ADMINISTRATOR NORTHERN STATE PRISON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-15-cv-06272)
District Judge: Honorable Brian R. Martinotti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 31, 2022
_____

Before: CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judge</u>, and ROSENTHAL,
<u>District Judge</u>.[*]

(Filed: April 25, 2022)
_____

OPINION[**]
_____

ROSENTHAL, <u>District Judge</u>.

_____

[*] Honorable Lee H. Rosenthal, Chief U.S. District Judge for the Southern District
of Texas, sitting by designation.
[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Richard Chippero appeals the District Court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Chippero was convicted in 2003 of purposeful or knowing murder and possession of a weapon for an unlawful purpose under N.J. STAT. ANN. § 2C:11-3 and N.J. STAT. ANN. § 2C:39-4. He is serving a life sentence with no possibility of parole until he has served thirty years. Chippero argues that the trial evidence was insufficient to support his convictions, violating due process. Because we conclude that it was not objectively unreasonable for the state court to decide that a reasonable jury could have found Chippero guilty, we will affirm.

I

This case arises from the July 1991 stabbing death of Ermina Rose Tocci, a forty-year-old white woman. Chippero, then a twenty-three-year-old white male, lived in the same mobile home park. Tocci's death was reported by John Simmons, a fifty-two-year-old black man who lived with Tocci. Chippero argues that the evidence pointed more to Simmons than to him and that it was insufficient.

The evidence included testimony by the law-enforcement officers who first responded to the 911 call from Simmons. The officers testified that they did not know and did not reveal details about how Tocci had been killed during the first hour and a half after they were at the crime scene. The jury also heard testimony from neighbors that on the night of the murder, Chippero had told them details about Tocci's death before the investigating officers knew or released that information.

The medical examiner testified about the likely weapon and time of death. A

2

forensic scientist testified that, while reviewing the crime scene and autopsy photographs, he noticed what appeared to be a shoeprint on Tocci's back. An investigator testified that he too later noticed a shoeprint on Tocci's back.

The officers testified about their investigation into Simmons's movements and whereabouts on the day in question. Simmons's coworker provided information about how and where Simmons spent most of the day. Simmons initially provided inconsistent information about his relationship with Tocci, but quickly became more forthcoming. He explained that he was not always honest with others about his relationship with Tocci because he was black and Tocci was white.

The jury also heard testimony from several witnesses placing Chippero near to, and Simmons away from, Tocci's mobile home on the day and during the likely time of the murder.

In addition to this testimony, a man visiting the mobile home park on the day Tocci died identified Chippero from a newspaper photograph as the man he saw near Tocci's home at the relevant time and described his clothing. Officers testified that when they executed a search warrant on the mobile home where Chippero lived, they seized a folding knife and sneakers of a type capable of making the shoeprint later found on the photo of Tocci's back. An officer and Chippero's mother both testified that Chippero's mother later gave the officer a t-shirt that she had found in the Chippero mobile home. The shirt had pink and orange stains. Chippero's mother washed and bleached the shirt before giving it to the officer.

3

The forensic evidence was scant and did not implicate Chippero or exculpate Simmons. The jury heard stipulations that excluded Chippero, but not Simmons, as the person whose sperm was found in Tocci's body. Blood was found on the shoelace of one of Chippero's shoes, but it was not Chippero's or Tocci's, and it was not compared to Simmons's blood. Blood was also found on the shoe, but the amount was too small to test for source.

One more detail. The witness who had identified Chippero near Tocci's home at the relevant date and time testified at trial that he had received a phone call at work from someone who identified himself as Simmons. The caller stated, "I killed Rosie." (J.A. at A1309). An investigating officer testified that the call came from the jail pod and floor where Chippero was held after his arrest. The officer testified that some inmates receive copies of discovery and are not prevented from sharing information with each other. In short, another inmate could have made the call.

The jury convicted Chippero of purposeful or knowing murder and possession of a weapon for an unlawful purpose but found him not guilty of felony murder and aggravated sexual assault. The judge sentenced Chippero to life imprisonment, with thirty years to be served before parole eligibility. After multiple appeals, Chippero filed a petition for habeas corpus in 2015. The District Court denied the petition and did not grant a certificate of appealability.

Chippero appeals. We granted a certificate of appealability as to "whether the District Court erred in denying his claim that the evidence was insufficient to sustain his

4

conviction." (J.A. at A57).

## II[1]

"[W]e review the [New Jersey] court's adjudication of the merits of the insufficient evidence claim on [Chippero's] direct appeal under the same standard that the District Court was required to apply, namely, the standard provided in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." Travillion v. Superintendent Rockview SCI, 982 F.3d 896, 901 (3d Cir. 2020) (citing Showers v. Beard, 635 F.3d 625, 628 (3d Cir. 2011)). Under AEDPA, habeas relief is available if a state court has decided the merits of the petitioner's habeas claim, and the adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 309, 319 (1979) (emphasis in original). A "reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Cavazos v. Smith, 565 U.S. 1, 7 (2011)

---

[1] The District Court had jurisdiction over the habeas petition pursuant to 28 U.S.C. § 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

(per curiam) (quoting <u>Jackson</u>, 443 U.S. at 326). A "state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." <u>Parker v. Matthews</u>, 567 U.S. 37, 43 (2012) (per curiam) (citation and internal quotation marks omitted).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Chippero guilty on both counts beyond a reasonable doubt. A person commits purposeful or knowing murder if he purposefully or knowingly "causes death or serious bodily injury resulting in death." N.J. STAT. ANN. § 2C:11-3(a)(1)(2); <u>State v. Lodzinski</u>, 265 A.3d 36, 53 (N.J. 2021). "Any person who has in his possession any weapon, except a firearm, with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the third degree." N.J. STAT. ANN. § 2C:39-4(d); <u>see State v. Villar</u>, 696 A.2d 674, 677 (N.J. 1997) (describing the elements).

Several neighbors testified that Chippero revealed details about Tocci's death when this information was known only to the immediate responders, or not known at all. Chippero claimed to have overheard information on the police scanner, but the jury listened to recordings of the scanner from that night. Several witnesses identified Chippero as having been around Tocci's home during the relevant date and time. One of these witnesses received a call from the floor of the jail where Chippero was housed in which the caller attempted to implicate Simmons.

The jury also heard evidence about the shoe found at Chippero's house and the photograph of the shoe print on Tocci's back that had treads similar to the treads of the

6

shoe recovered from Chippero's room, and about the stained t-shirt that Chippero's mother found and washed and bleached before giving it to the police. Last, a rational trier of fact could have credited the evidence pointing away from Simmons.

A rational trier of fact, drawing the competing inferences in the prosecution's favor, could have concluded that Chippero purposefully or knowingly used a knife to inflict wounds on Tocci, causing her to bleed to death, knowing that she was likely to suffer serious bodily injury based on the location where he inflicted the stab wounds, including the fatal wound to her neck. The evidence was sufficient to support Chippero's convictions for purposeful or knowing murder and possession of a weapon for an unlawful purpose.

III

For the foregoing reasons, we will affirm.

7