# United States Court of Appeals
## For the First Circuit

Nos. 07-2660, 07-2693

JORDAN MARTELL RICE,

Petitioner, Appellant,

v.

TIMOTHY HALL, SUPERINTENDENT,

Respondent, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Boudin, John R. Gibson,[*] and Howard,
Circuit Judge.

Shannon Frison with whom Frison Law Firm, P.C. was on brief
for appellant.
Argie K. Shapiro with whom Martha Coakley, Attorney General,
and James J. Arquin, Assistant Attorney General, Criminal Bureau,
were on brief for appellee.

May 4, 2009

[*]Of the Eighth Circuit, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  In 1998, Jordan Martell Rice was convicted in Massachusetts state court of the murder of his neighbor Diane Harrigan.  Harrigan was raped and then fatally stabbed eleven times; afterward, the couch on which she was raped and stabbed and the bed on which her body was placed were set afire.  After a four-day trial, a jury convicted Rice of arson and first-degree murder by reason of extreme atrocity and cruelty and he was sentenced to life without the possibility of parole for murder, concurrent with a 19- to 20-year prison term for arson.

There was substantial evidence at the trial that Rice had committed the rape, the murder and the arson.  This included DNA evidence that Rice was the source of sperm found in the victim.  Further, he had initially denied to police that he had ever had sexual relations with her but admitted at trial that they had had sexual relations on the day before her death.  But, said Rice, this had been consensual, earlier in the day and at a different location.  He denied any involvement in the crimes.

However, several different witnesses testified to inculpatory statements by Rice on several different occasions, some close to the time of the crime and others considerably later.  The most damning were statements on two different occasions amounting to confessions; one was that Rice had had a girlfriend who "disrespected him, and he had gotten rid of her, and had put plenty

of holes in her and burned her."  The jury convicted after four days of deliberation.

Rice thereafter filed a post-conviction motion for a new trial in state court, alleging inter alia that he had been denied effective assistance of counsel because his lawyer had not acted to preserve, test and present "potentially exculpatory forensic evidence at the crime scene."  The state trial court denied the motion and the Supreme Judicial Court ("SJC") affirmed, saying that Rice "had made no showing that any tests would have produced something that likely would have influenced the outcome of the case."  Commonwealth v. Rice, 805 N.E.2d 26, 38 (2004).

Rice then sought habeas review in the federal district court on a host of grounds, but was denied relief.  Our review of this is effectively review of the SJC's disposition, Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007), which is cabined by statute and case law: pertinently, state court factual findings are presumed correct and the SJC's legal determinations are to be overturned only if unreasonable or contrary to clearly established federal law.  28 U.S.C. § 2254(d)-(e) (2006); see also McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002).

The competency claim before us, based on a certificate of appealability, requires some context to be understood.  A large number of items in the victim's apartment were collected by the police and catalogued, many apparently stained with blood; the

-3-

prosecution had a few tested which proved by DNA analysis to be that of the victim. Nothing suggested that the attacker had been wounded and, apparently assuming with some reason that the badly wounded victim was the source of all of the blood, the prosecution left it at that.

The gist of Rice's competency claim is that defense counsel should have insisted on DNA testing of all of the blood or hair samples. Rice requested this of his attorney but the attorney did not do so. And even if all the DNA samples belonged to the victim, the jury (Rice argues) could have found it exculpatory that no DNA evidence directly tied Rice to the immediate crime scene. So, he says, defense counsel ought to have moved to test all 65 items from the scene that had blood, hair, or fibers affixed.

To prevail, a defendant must show that the counsel's performance was unreasonable and that the outcome would likely have been different but for the error. Strickland v. Washington, 466 U.S. 668, 687-92 (1984). The prejudice requirement has been variously stated, Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007); in practice, at least, perhaps more egregious errors may more readily be deemed prejudicial. But in the present case there is no showing of incompetence, let alone likely prejudice.

At trial Rice's counsel presented what appears to be a decent defense. There was no eye-witness proof that he had committed the crime; Rice gave testimony explaining the forensic

-4-

evidence (although the original false denial remained);[1] and counsel's efforts kept jury deliberations going for four days and resulted in an acquittal on the rape charge.

Further, counsel took advantage of the lack of any other forensic evidence linking Rice to the crime scene. The defense's closing argument stressed the fact that the Commonwealth had not presented any fingerprints, hair samples or other DNA evidence linking Rice to the murder itself; and, of course, the sperm DNA showed only what Rice was now prepared to admit, namely, voluntary sexual relations. But the question remains to be answered: What was to be lost by pressing for the testing of the other items?

Defense counsel had to consider the likelihood that further forensic testing on items found in the apartment would have provided a link to Rice, thus supplying the missing forensic link. Counsel's judgment in situations like this is accorded great respect. Sleeper, 510 F.3d at 38-39. Rice's trial counsel, who had defended many murder cases, rejected Rice's request for testing but made numerous pre-trial motions, including a motion to suppress the results of DNA testing of sperm found in the victim's body and motions to hire a microbiologist and population frequency expert.

---

[1]Rice's position at trial was that he was having an affair with the victim and that he and the victim had engaged in sexual relations at approximately 4 p.m. the afternoon of her death--the latter occurring sometime between 1:15 and 4:40 a.m. the next morning.

On appeal Rice argues that he had already admitted having sexual relations with the victim, so DNA evidence linking him to her apartment would have left him no worse off; and evidence showing the presence of someone else could have helped his cause. But the sexual relations, according to Rice, had occurred elsewhere and DNA evidence showing Rice at the victim's apartment, especially if derived from blood stains, could have made his position worse. One can challenge witnesses who say that the defendant confessed; forensic evidence would have made the defense hopeless.

In addition, nothing creates any <u>likelihood</u> that the result of forensic testing would have been exculpatory, let alone so exculpatory as to overturn a conviction heavily supported by four different witnesses testifying to incriminating statements by Rice, two of them constituting virtual confessions. Prejudice is an independent requirement for relief, and Rice's argument as to prejudice rests almost entirely upon "mays" and "could haves."

On appeal, Rice points us to an affidavit from a forensic geneticist submitted for the first time in this court and so not part of the record, <u>In re Colonial Mortgage Bankers Corp.</u>, 186 F.3d 46, 49-50 (1st Cir. 1999), and so has been stricken. Apart from questioning the DNA evidence against Rice (an irrelevance since Rice admits to sexual relations with the victim), the affidavit says in entirely general terms that testing "may" have proved the

presence of someone aside from Rice.  This, as already explained, is not enough.

Affirmed.