NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3396
_____

KARL S. CHAMBERS,
                                        Appellant
v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
PENNSYLVANIA ATTORNEY GENERAL; FIRST DEPUTY PROSECUTOR YORK
COUNTY DISTRICT ATTORNEY
(*Pursuant to Rule 43(c), Fed. R. App. P.)
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 3:06-00980)
District Judge:  Honorable William J. Nealon
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 13, 2011
Before:  SCIRICA, BARRY, and WEIS, Circuit Judges.
(Filed: August 26, 2011)
_____

OPINION
_____

WEIS, Circuit Judge

        In 1987, a jury in York County, Pennsylvania, convicted Karl Chambers of

the 1986 murder of Anna Mae Morris.  He is now serving a life sentence for that crime.

After eighteen years of litigation in the Pennsylvania state courts, he filed this petition for

a writ of habeas corpus, asserting, inter alia, ineffective assistance of counsel and seeking

a new trial. The District Court dismissed his petition, and he now appeals. We will affirm.

On the evening of February 1, 1986, the body of Anna Mae Morris was discovered under a bridge; she had been robbed and bludgeoned to death. Ten months later, while incarcerated on an unrelated matter, Chambers reportedly told his fellow inmates that he and two friends had killed Morris. He was arrested and charged with the murder. He denies having made the confession and to this day maintains his innocence.

The evidence linking petitioner to the crime was circumstantial. Testimony at trial demonstrated that petitioner had had no money during the day of the murder. However, by that evening -- after Morris had been robbed and killed -- he had enough cash to purchase alcohol and marijuana for himself and his friends. Two witnesses reported that they had seen petitioner near the scene of the murder, apparently arguing with the victim, about one hour before her body was found. One testified that petitioner was at the time carrying a large axe handle, which he often used as a cane.[1] He

---

[1] The axe handle has been referred to by various courts as a "large stick," "walking stick" or "stick." See, e.g., Commonwealth v. Chambers, 599 A.2d 630, 634 (Pa. 1991) ("Chambers I"). To prevent confusion between the axe handle and a smaller, blood-spattered sapling stick that was found at the scene of the crime, we will refer to it exclusively as the "axe handle."

abandoned the axe handle -- presumed to be the murder weapon -- outside a bar several hours after the murder took place.

Defense counsel's trial strategy was to assert the petitioner's innocence by highlighting the absence of physical evidence linking him to the crime. In addition, counsel attempted to demonstrate the possibility that another individual or individuals may have committed the murder.

Petitioner was convicted and sentenced to death. In post-trial motions, he unsuccessfully raised newly-discovered evidence of another person's confession to the murder. The Pennsylvania Supreme Court affirmed the conviction but vacated the death sentence on direct appeal.[2] After a second penalty-phase trial in 1994, another jury sentenced petitioner to death; in 1996, the Pennsylvania Supreme Court affirmed.[3]

In November 1997, Chambers' new attorney filed a Petition for Post Conviction Relief pursuant to 42 Pa. C.S.A. §§ 9541-51, and thereafter requested forensic testing of clothing and blood evidence from the crime scene -- the same evidence he seeks here. A hearing was granted on several issues, including whether his trial lawyer's failure

---

[2] See Chambers I, 599 A.2d at 644. That Court also rejected Chambers' pro se petition, which included five allegations of ineffective assistance of counsel. Id. at 642 n.7.

[3] See Commonwealth v. Chambers, 685 A.2d 96, 100, 110 (Pa. 1996) ("Chambers II"). That sentence would be vacated in 2005, and petitioner given a life term without parole, after Atkins v. Virginia, 536 U.S. 304 (2002), which held that the Eighth Amendment precluded the death penalty for offenders who, like Chambers, are mentally retarded.

to seek such testing amounted to constitutionally ineffective assistance of counsel. After several months of proceedings, the state court denied the discovery request and dismissed the ineffective assistance claim. The Pennsylvania Supreme Court affirmed those rulings. Commonwealth v. Chambers, 807 A.2d 872, 889 (Pa. 2002) ("Chambers III").

On May 15, 2006, petitioner filed a pro se Petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Pennsylvania. The Court appointed counsel, and an amended petition was filed in July 2006. There, petitioner contended that, because of court error and ineffective assistance of counsel, he was precluded at trial from obtaining scientific evidence that supported his claims of innocence.[4]

In September 2006, petitioner sought discovery of various items of forensic evidence. As with his unsuccessful PCRA discovery request, he asked for Morris's fingernail clippings; hair, clothing and a sapling stick found at the crime scene; the axe handle; and any evidence of sexual assault.

The District Court referred the discovery request to a magistrate judge, who found that good cause existed to warrant discovery and forensic testing of the physical

---

[4] In addition, petitioner asserted that the prosecution failed to disclose exculpatory evidence, including another individual's confession, in violation of Brady v. Maryland, 373 U.S. 83 (1963); that the prosecution's closing argument deprived him of a fair trial; and that the cumulative prejudicial effect of these errors entitled him to relief. All of these issues had been raised and rejected in the state courts -- some of them repeatedly -- on direct and collateral appeal.

4

evidence. The Commonwealth appealed, and the District Court vacated the order because "[p]etitioner did not show that the requested discovery w[ould] substantiate his claim that trial counsel was unreasonable for failing to" secure the items for testing.

In July 2009, the District Court adopted the Report and Recommendation that the petition be dismissed. This appeal followed.

## I. DISMISSAL OF THE HABEAS PETITION

Because "the District Court ruled on [the] habeas petition without an evidentiary hearing, our review of its decision is plenary." Thomas v. Horn, 570 F.3d 105, 113 (3d Cir. 2009). In other words, "we review the state courts' determinations under the same standard that the District Court was required to apply." Id.

Federal courts may not grant relief on a habeas claim that was "'adjudicated on the merits' in state court unless the adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Lewis v. Horn, 581 F.3d 92, 100 (3d Cir. 2009) (quoting 28 U.S.C. § 2254(d)).

In this case, the PCRA court conducted an extensive evidentiary hearing, at which the petitioner's trial counsel testified about his strategy. Ultimately, that court held that petitioner was not entitled to forensic testing and that his trial lawyer's decision to

5

forego such testing did not amount to ineffective assistance. As the Pennsylvania

Supreme Court observed, petitioner had

> "failed to show good cause why the discovery should be
> permitted. [He] failed to explain why trial counsel had not
> previously undertaken to request this discovery. Likewise, . .
> . . [he] failed to question his trial counsel at the PCRA hearing
> to determine why counsel did not seek blood testing of both
> [himself] and Morris at the time of the original trial and trial
> counsel did not explain his inaction in the Affidavit that
> [petitioner] submitted to the PCRA court."

Chambers III, 807 A.2d at 889 (affirming PCRA court's decision as to guilt phase).

Accordingly, the merits of the petitioner's claims have been adjudicated.

See Thomas, 570 F.3d at 115 ("to qualify as an 'adjudication on the merits,' the state

court decision must . . . . have preclusive effect"). We therefore may not disturb the state

court's ruling unless it was clearly contrary to established federal law or unreasonable in

light of the evidence presented. See Lewis, 581 F.3d at 100.

We are obliged to "be deferential to counsel's tactical decisions, not . . .

employ hindsight, and . . . give counsel the benefit of a strong presumption of

reasonableness." Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994). When analyzing

ineffective assistance of counsel claims, we may "'address not what is prudent or

appropriate, but only what is constitutionally compelled.'" Id. at 1495 (quoting Burger v.

Kemp, 483 U.S. 776, 794 (1987)).

6

To establish that his lawyer's performance was deficient, petitioner first "must show that . . . . counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment. Second, [he] must show that . . . . counsel's errors were so serious as to deprive [him] of a fair trial . . . whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984).

Petitioner "has not made a substantial showing that the district court erred in concluding" that his lawyer's performance was constitutionally deficient. Deputy, 19 F.3d at 1495. He has failed to demonstrate that the decision not to seek forensic testing amounted to the absence of counsel guaranteed by the Sixth Amendment.

The record shows that counsel focused on the lack of physical evidence linking Chambers to the crime, both during the original trial and at the second sentencing hearing following remand. Giving counsel the benefit of the doubt, as we must under Strickland, we cannot conclude that this was ineffective assistance. Whatever counsel may have gained by testing was and remains speculative (and thus, the claim fails under Strickland) and may well have inculpated Chambers, in which case there was an affirmative, strategic reason not to seek it.[5] See, e.g., Rice v. Hall, 564 F.3d 523, 525-26

---

[5] We need not address the second prong of Strickland, see 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one"); however, petitioner has not demonstrated that the jury would have reached a different conclusion if trial counsel had pursued the forensic evidence sought. We discuss this further in Section II, *infra*.

(1st Cir. 2009) (trial attorney was not ineffective for failing to obtain forensic testing of crime scene artifacts where lack of forensic evidence presented by state was used to raise doubts about defendant's guilt and there was no "likelihood that the result of forensic testing would have been exculpatory").

## II.  REVERSAL OF THE ORDER GRANTING DISCOVERY

Petitioner asserts that the District Court erred in reversing the magistrate judge's order granting forensic testing of certain crime scene items.  We review the District Court's order for an abuse of discretion.  Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010).

Habeas petitioners are not automatically granted discovery.  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Under the Rules Governing § 2254 Cases, a party must specify the discovery sought and "provide reasons for the request."  Rule 6(b), 28 U.S.C. foll. § 2254.  Leave of court is required for such discovery to proceed, see Rule 6(a), and should be granted only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief,'" Bracy, 520 U.S at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

The magistrate judge found that good cause existed because the test "results could undermine the . . . theory on which the petitioner's conviction was secured."  Specifically, he reasoned, the jury might have been less inclined to "convict if the

8

forensic evidence contradicted or, at least, did not support" the eyewitness testimony indicating petitioner's guilt.

The District Court observed that, whatever their results, the scientific tests could not show "that trial counsel was unreasonable for failing to" pursue them. His attorney's strategy had been to "argue that there was no physical evidence linking Petitioner to the crime," and he "could have reasonably concluded that it was better to criticize the Commonwealth's case for lack of evidence than to risk obtaining proof of Petitioner's guilt." Stated another way, the question was not whether counsel was *correct* in concluding that the forensic evidence might have inculpated petitioner, but rather, whether counsel's decision not to seek the evidence was *defensible as a matter of trial strategy*.

In Toney v. Gammon, 79 F.3d 693 (8th Cir. 1996), petitioner alleged that counsel had been ineffective for, among other things, failing to request certain forensic tests. Id. at 696-97. The Court of Appeals held that an evidentiary hearing was required, because none of the state's courts had considered the petitioner's arguments and, therefore, the state court record "d[id] not conclusively establish that Toney's claims [we]re either barred from review or without merit." Id. at 697. That sharply distinguishes

the case before us and makes further discussion unnecessary.[6]

Nor do we find that <u>Showers v. Beard</u>, 635 F.3d 625 (3d Cir. 2011), issued after briefing in this case was completed, requires reversal here. <u>Showers</u> did not involve a discovery request. We held that trial counsel was ineffective because he had not only failed to investigate "readily available" expert testimony that supported the defense's theory, but also "failed to . . . make a reasonable decision that [such] investigation was unnecessary." 635 F.3d at 632. Chambers has not shown, either here or in the state courts, that trial counsel failed to make a reasonable determination that forensic testing was not needed in his case.

We are persuaded by the logic of <u>Rice v. Hall</u>, <u>supra</u>, 564 F.3d 523. There, as here, petitioner asserted ineffective assistance because his lawyer did not "test and present 'potentially exculpatory forensic evidence [from] the crime scene[,]'" <u>id.</u> at 524, including fingerprints, hair, and other DNA-containing materials, but instead emphasized the prosecution's failure to test those items, <u>see id.</u> at 525. Rejecting the ineffective assistance claim, the First Circuit observed that "[d]efense counsel had to consider the likelihood that further forensic testing . . . would have provided a link" between defendant

---

[6]  In addition, petitioner relies on <u>Yarris v. County of Delaware</u>, 465 F.3d 129 (3d Cir. 2006). We are not persuaded that that case controls. In <u>Yarris</u>, there was evidence that police officers and, perhaps, the prosecutor, had actually tampered with evidence in an effort to "frame" defendant. While Yarris was ultimately granted permission to get DNA testing, it apparently was not requested or granted for the purpose of supporting his ineffective assistance of counsel claim.

and the murder, and "[c]ounsel's judgment in situations like this is accorded great respect." [7] Id.

The same reasoning applies in this case. The District Court here carefully and painstakingly reviewed the record and explained why good cause did not exist for any of the items requested by petitioner. For example, defense counsel at trial established through cross-examination of the medical examiner that, if the axe handle had been the murder weapon, it would have contained blood residue, but no such residue had been found on it. As the District Court observed, the ALS testing petitioner requested would do one of two things. It would either reveal blood on the handle that was not detectable with the testing methods employed in 1986 -- further implicating petitioner -- or it would show that no blood was present on the stick, which is precisely the information the jury that convicted petitioner was given. The test could not, and would not, demonstrate that counsel was ineffective for not seeking to perform it.

Similarly, with respect to the hair and clothing at the crime scene, all but one of the hairs found at the crime scene was shown to be consistent with that of the victim or a dog.[8] The other strand of hair was found in a hat, and neither the hat nor the

---

[7] Rice's DNA was found on the victim's body; after initially denying to police that he knew the woman, he testified that they had been having an affair and that he had been intimate with her during the afternoon preceding her murder. Rice, 564 F.3d at 524-25 & n.1.
[8] The victim was discovered by a young man walking his dog; the presence of dog hairs at the scene was therefore unremarkable.

11

hair found in it was tied to petitioner at trial.

We agree with the District Court that petitioner failed to show that trial counsel was unreasonable for attempting to avoid a comparison test that might have provided the prosecution with damning evidence placing Chambers at the crime scene.

Likewise, nothing on the victim's clothes tied petitioner to the crime, and there was no evidence that the police failed to thoroughly inspect the victim's attire for traces of hair, blood or other fluids. A more extensive DNA test today would add nothing to the case beyond what the convicting jury already knew. Petitioner has not shown that such testing would support his ineffectiveness claim, nor that of actual innocence.

Stated more pithily, we agree with the District Court that "absence of evidence is not evidence of absence."

With respect to the petitioner's request for fingernail clippings and oral and vaginal swabs, there was no evidence put forth at trial that the victim had scratched her assailant, nor that she had been sexually assaulted. Accordingly, forensic testing of these items would demonstrate neither the petitioner's actual innocence nor trial counsel's ineffectiveness.

Along the same lines, petitioner has asked for forensic testing of the small sapling stick found at the crime scene with a drop of blood so tiny, available tests at the time could not determine whether it came from a human or animal. There was no indication, however, that the stick was used as the murder weapon; it was too small and

12

contained too little blood to have been used for that purpose.

As the District Court noted, testing this stick today would not reveal anything that the jury did not already know (or not know), and trial counsel cannot be deemed ineffective for failing to request a test not available at the time.

Finally, the District Court rejected the petitioner's request for all crime scene photographs, charts, diagrams, et cetera, as precisely the type of fishing exhibition prohibited by the restrictive discovery rules for habeas cases. We agree. Petitioner has failed to specify what information he believes those items would reveal, or how they would demonstrate his actual innocence or trial counsel's ineffectiveness.

Because the results of the scientific tests would not shed light on the reasonableness of the decision to forego such testing, nor on any of the petitioner's other habeas claims, the district judge's reasoning was supported by the law and solid logic. The ruling was not clearly erroneous. The District Court did not abuse its discretion in vacating the magistrate judge's order granting discovery.

Chambers alleged that his trial counsel was incompetent and that the discovery he sought would prove such incompetence. He has shown neither. An argument that "rests almost entirely upon 'mays' and 'could haves'" does not satisfy the

requirements for habeas relief.  <u>Rice</u>, 564 F.3d at 526.[9]

Accordingly, the District Court's order will be affirmed.

---

[9] We have carefully reviewed <u>Skinner v. Switzer</u>, ___ U.S. ___, 131 S. Ct. 1289 (March 7, 2011), and its discussion of the interplay between habeas corpus petitions and actions filed pursuant to 42 U.S.C. § 1983.  Because we are satisfied that <u>Skinner</u> does not affect directly the issues presented here, we need not address it further.